*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0282p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

JASON GETSY,

       *Plaintiff-Appellant,*

     *v.*

No. 08-4199

TED STRICKLAND, et al.,

       *Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 04-01156—Gregory L. Frost, District Judge.

Argued: July 30, 2009

Decided and Filed: August 13, 2009[*]

Before: MERRITT, MOORE, and GILMAN, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** David C. Stebbins, FEDERAL PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant. Charles L. Wille, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees. **ON BRIEF:** David C. Stebbins, Allen L. Bohnert, FEDERAL PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, Michael J. Benza, THE LAW OFFICE OF MICHAEL J. BENZA, Chagrin Falls, Ohio, for Appellant. Charles L. Wille, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees.

     GILMAN, J., delivered the opinion of the court, in which MOORE, J., joined. MOORE, J. (pp. 8-11), delivered a separate concurring opinion. MERRITT, J. (pp. 12-17), delivered a separate dissenting opinion.

_____

[*] This decision was originally issued on August 12, 2009 stating that a separate dissenting opinion would be forthcoming by Judge Merritt. That dissent is incorporated into this opinion.

_____

**OPINION**

_____

RONALD LEE GILMAN, Circuit Judge. Jason Getsy was convicted of aggravated murder and sentenced to death in 1996. In 2007, he filed an intervenor complaint in a lawsuit brought under 42 U.S.C. § 1983 by fellow inmate Richard Cooey that challenged Ohio's lethal-injection protocol. After this court concluded that Cooey's challenge was time barred, *see Cooey v. Strickland,* 479 F.3d 412 (6th Cir. 2007) (*Cooey II*), the district court dismissed Getsy's complaint on the same ground. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

**I.**

*Cooey II*'s central holding is that the two-year statute of limitations for a § 1983 lawsuit challenging Ohio's lethal-injection protocol begins to accrue on the latest of the following possible dates: (1) "upon conclusion of direct review in the state court or the expiration of time for seeking such review," or (2) in 2001, when Ohio adopted lethal injection as the sole method of execution. *Cooey II*, 479 F.3d at 422. With reference to the first of the alternative dates, the "conclusion of direct review" occurs when, after the state supreme court has affirmed the defendant's conviction and sentence on direct appeal, the United States Supreme Court denies the inmate's petition for a writ of certiorari. *Id.* (explaining that the conclusion of direct review occurs when the "United States Supreme Court denied direct review").

In this case, after the Supreme Court of Ohio affirmed Getsy's conviction and sentence, the United States Supreme Court denied Getsy's petition for a writ of certiorari in 1999. *Getsy v. Ohio*, 527 U.S. 1042 (1999). This means that, under *Cooey II*, Getsy's two-year statute of limitations began to accrue in 2001, when Ohio adopted lethal injection as its exclusive method of execution. But Getsy's complaint was not filed until May 2007, several years after the two-year time frame had already elapsed. We therefore conclude that Getsy's

constitutional challenge to the Ohio's lethal-injection protocol should be dismissed as untimely pursuant to *Cooey II*.

Despite this reasoning, Getsy maintains that *Cooey II* does not bar his claim. He argues that *Cooey II* is distinguishable because (1) *Baze v. Rees*, 128 S. Ct. 1520 (2008), created a new constitutional right that Getsy was previously unable to invoke, (2) Ohio modified its lethal-injection protocol on May 14, 2009, and (3) a panel of this court vacated his death sentence (even though an *en banc* decision of this court later reinstated the sentence). Getsy also argues that *Cooey II* was wrongly decided. We will address each of these points in turn.

## II.

Getsy first argues that the Supreme Court's decision in *Baze v. Rees*, 128 S. Ct. 1520 (2008), reset the statute-of-limitations period for Getsy because the case purportedly represents the first time that the Supreme Court explicitly recognized the right to challenge lethal-injection protocols under the Eighth Amendment. His basic contention is that *Baze* created a previously unrecognized constitutional right, so that Getsy could not possibly have been on notice to vindicate that right before the decision was issued. *See Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2001) ("In determining when the cause of action accrues in § 1983 cases, we look to the event that should have alerted the typical lay person to protect his or her rights.").

Getsy's argument is unpersuasive. *Baze* did not, in our view, create a new Eighth Amendment right. The Supreme Court has long recognized the right to challenge execution methods under the Eighth Amendment. *Gregg v. Georgia*, 428 U.S. 153, 170 (1976) ("In the earliest cases raising Eighth Amendment claims, the Court focused on particular methods of execution to determine whether they were too cruel to pass constitutional muster.") The Supreme Court has also recognized, more than 100 years before *Baze* was decided, that inmates have the right to challenge death-penalty practices that might cause undue suffering. *In re Kemmler*, 136 U.S. 436, 447 (1890) ("Punishments are cruel when they involve torture or a lingering death . . . ."). Because we do not believe that *Baze* created a new constitutional right, Getsy's attempt to avoid the statute of limitations on that basis is without merit.

Nor were constitutional challenges to specific lethal-injection protocols unprecedented before *Baze*.  As early as 1997, at least one federal district court recognized the possibility of bringing such a claim.  *See Walker v. Epps*, 550 F.3d 407, 416 (5th Cir. 2008) (holding that *Baze* did not reset the date of accrual, in part because "as early as 1997 the United States District Court for the Southern District of Mississippi recognized that inmates could challenge Mississippi's lethal injection protocol in a § 1983 suit").  The notion that, prior to *Baze*, protocol challenges were unavailable as a matter of law is thus demonstrably false.

So if *Baze* did not create a new constitutional right, what precisely did *Baze* accomplish?  The answer, we believe, is that *Baze clarified the standards that should apply* to the merits of Eighth Amendment protocol challenges.  Justice Thomas acknowledged that *Baze* simply created a new "*formulation of the governing standard*" rather than an entirely new right.  *See Baze*, 128 S. Ct. at 1556 (Thomas, J., concurring in the judgment) (emphasis added).

This raises the question of whether *Baze*'s freshly clarified standards trigger a new accrual date.  We do not believe that they do.  As previously noted,"[i]n determining when the cause of action accrues in § 1983 cases, we look to the event that *should have alerted the typical lay person* to protect his or her rights." *Trzebuckowski*, 319 F.3d at 856 (emphasis added).  *Cooey II* held, rightly or wrongly, that the relevant event is the later of either (1) the "conclusion of direct review in the state court or the expiration of time for seeking such review," or (2) the year 2001, when Ohio adopted lethal injection as the sole method of execution.  *Cooey II*, 479 F.3d at 422.  Nothing in *Baze* gives us cause to question *Cooey II*'s determination of when the statute-of-limitations clock begins to tick.

In this case, Getsy's constitutional claim is focused solely on Ohio's particular application of the lethal-injection method of execution.  He contends that someone on the execution team might make a mistake in administering the drug cocktail and that he might suffer a painful death akin to torture as a result.  Because his ability to assert these kinds of challenges was well established long before *Baze*, as conclusively shown by Getsy's intervention in the *Cooey II* case in 2007, we are unpersuaded that *Baze* caused Getsy's deadline to file his § 1983 claim to be reset.

**III.**

Getsy also attempts to distinguish *Cooey II* by asserting that the modifications to Ohio's lethal-injection protocol, which occurred on May 14, 2009, created a new date of accrual. His basic claim is that the May 14th modifications reset his accrual date because the particular version of the protocol that Ohio adopted on that date was a fact that could not have been discovered through the exercise of due diligence before the time he intervened in Cooey's suit.

But *Cooey II* has already considered and rejected Getsy's position. Like Getsy, Cooey had argued that the accrual date was reset because Ohio had changed its protocol in 2006. Ohio had adopted the following five changes at that time:

> First, officials removed time deadlines that previously dictated executions begin by a certain hour, and be completed within a narrow time frame. Second, prisoners are given more in-depth medical examinations prior to execution. Third, correctional personnel will make every effort to obtain two sites for heparin locks before proceeding to the execution chamber. Fourth, personnel will no longer use "high pressure" saline injections to check the viability of the intravenous lines. Instead, a "low pressure" drip of saline will be used to keep the line open and confirm its ongoing viability. Fifth, correctional personnel will observe each inmate's arms and check for signs of intravenous incontinence while the drugs are being administered to the inmate.

*Cooey II*, 479 F.3d at 424.

Despite these alterations, *Cooey II* declined to reset Cooey's statute-of-limitations deadline, even though the 2006 changes could not have been previously discovered by Cooey through the exercise of due diligence. Cooey's attempt to reset the accrual date based on the above-listed changes was unsuccessful because he failed to make even a prima facie showing that the modifications would increase his suffering. Nor did Cooey attempt to link the five protocol alterations to the expert testimony that already *did* exist in the record regarding alleged problems with the three-drug lethal-injection cocktail. This is all that *Cooey II* meant when the court criticized Cooey's failure to show that the five changes "relate[d] to" Cooey's "core complaints." *Id*.

Turning now to the present case, Getsy points out similar alterations in the protocol. One change is that a member of the "medical team," while witnessed by another medical-

team member, will dispose of unused medications. Other modifications include, for example, more training, the supervision of another medical professional in administering the drugs, and a provision that a noninvasive device may be used to locate a vein. Getsy's main concern, however, is that officials are now provided with too much discretion in implementing the lethal injection.

But Getsy has failed to make even a prima facie showing that the May 14, 2009 protocol modifications might create undue suffering. The actual 2007 protocol changes in fact explicitly state that the Warden may make policy adjustments "to ensure that the completion of the execution is carried out in a humane, dignified and professional manner." Execution Protocol No. 01-COM-11 (May 14, 2009), superseding 01-COM-11 (Oct. 11, 2006). This is hardly a change likely to cause *increased* suffering.

Nor has Getsy attempted to link the May 14, 2009 changes to the evidence previously submitted as part of Cooey's "core complaints." (Getsy's "core complaint," like Cooey's, is that the initial drug of the lethal-injection drug cocktail will insufficiently anaesthetize him, thus subjecting him to extreme pain when the other two drugs are administered.) In short, Getsy has not made a prima facie showing that the May 14, 2009 modifications will likely subject him to extreme pain based on either new evidence or on existing evidence that has already been proffered in support of his "core complaints." We therefore conclude that Getsy has failed to show that the changes of May 14th to Ohio's lethal-injection protocol suffice to reset his claim-filing deadline.

## IV.

Getsy's final argument is based on the fact that a majority of the present panel vacated his death sentence in *Getsy v. Mitchell*, 456 F.3d 575 (6th Cir. 2006) (*Getsy I*). Although that decision was vacated after this court decided to hear Getsy's appeal *en banc*, *see Getsy v. Mitchell*, 495 F.3d 295 (6th Cir. 2007) (*en banc*) (*Getsy II*), he nevertheless maintains that the initial panel's favorable decision reset the date of accrual for statute-of-limitations purposes.

The problem with this argument is that *Cooey II* held that the accrual period begins for plaintiffs like Getsy either "upon conclusion of direct review in the state court" (1999 for

Getsy) or in 2001, when Ohio made lethal injection its sole method of execution. In either case, what happened on collateral review was well beyond the two-year statute of limitations and is thus irrelevant to the accrual of Getsy's § 1983 claim. *Cooey II* is therefore not distinguishable on the basis that a panel of this court rendered a favorable decision that was subsequently vacated. In sum, Getsy's case was correctly dismissed as untimely by the district court.

## V.

Finally, Getsy argues in great detail that *Cooey II* was wrongly decided. We are frankly inclined to agree. But our disagreement with *Cooey II* does not empower us to avoid applying that case's holding. *See Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) (concluding that one panel of this court cannot overrule the holding of a prior panel unless the prior case is superseded by (1) this court sitting *en banc* or (2) a subsequent decision of the Supreme Court). This panel therefore has no authority to reverse the district court below on the basis that *Cooey II* might have been erroneously decided.

## VI.

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

_____

**CONCURRENCE**
_____

KAREN NELSON MOORE, Circuit Judge, concurring. Constrained by the rule announced in *Cooey v. Strickland*, 479 F.3d 412, 422 (6th Cir. 2007) (*Cooey II*), I concur in the majority opinion. I write separately, however, to highlight my conviction that *Cooey II* was wrongly decided and to urge immediate en banc review of the application of that rule in the present case to ensure that Getsy's potentially valid 42 U.S.C. § 1983 claim is not improperly and unjustly time barred.

In *Cooey II*, the panel's majority held that the statute-of-limitations period for a § 1983 method-of-execution challenge begins to run "upon conclusion of direct review in the state court or the expiration of time for seeking such review," or when Ohio adopted lethal injection as the sole method of execution. *Cooey II*, 479 F.3d at 422. The panel's majority also acknowledged that the statute-of-limitations period can be reset when "the lethal injection protocol . . . changes" in a manner that "relates to" the death-sentenced prisoner's "core complaints" regarding the lethal-injection process. *Id.* at 424. The panel's majority provided little illustration of this core-complaints exception, other than to conclude that the prisoner in *Cooey II* had failed to meet the threshold. *Id.* at 424.

For the compelling reasons set forth in Judge Gilman's dissent in *Cooey II*, *id.* at 424-31, I believe the *Cooey II* panel majority clearly erred in establishing the statute-of-limitations period as outlined above. Undertaking a proper legal analysis, I find convincing Judge Gilman's conclusion that the statute of limitations for bringing a § 1983 method-of-execution challenge starts to run when the prisoner knows or has reason to know of the facts that give rise to the claim and when the prisoner's execution becomes imminent. *Id.* at 426, 429 (Gilman, J., dissenting); *see also McNair v. Allen*, 515 F.3d 1168, 1178 (11th Cir. 2008) (Wilson, J., dissenting). A prisoner's execution can become imminent only when he or she has exhausted both state and federal legal challenges to the death sentence, which is a moment that occurs, at the earliest, upon the Supreme Court's denial of the prisoner's first writ of habeas corpus. *Cooey II*, 479 F.3d at 426. Indeed, a prisoner's execution may not be imminent until the state sets an execution date following the rejection of the prisoner's

first habeas petition. It is only upon the conclusion of habeas review and when the prisoner knows or has reason to know of the facts that give rise to the method-of-execution challenge that a court may properly establish the accrual date. *Cooey II*'s ill-advised rule unduly entangles a prisoner's challenges to the validity of his or her sentence with the wholly distinct question of whether the method by which he or she will be executed—assuming the Court ultimately denies habeas relief—can withstand constitutional scrutiny. These are distinct legal and factual questions, and, as Judge Gilman articulately stated, requiring simultaneous litigation of such divergent issues will only decrease judicial efficiency and increase injustice. *Id.* at 429.

Furthermore, in addition to setting the accrual date upon the conclusion of habeas review or the subsequent imposition of an execution date, we must be mindful that in many states the lethal-injection protocol is neither a creature of statute nor of administrative rule. As a result, there is very little, if anything, to constrain the protocol's amendment or to require that the administering body provide notice to concerned parties when it changes execution procedures. *See id.* at 426-27 (noting that the Ohio Department of Rehabilitation and Correction "can change the protocol at any time . . . . [, n]o statutory framework determines when or how such changes may occur[, n]or is there a framework governing when, or even if, such changes will be publicized"); *McNair*, 515 F.3d at 1178 ("The protocol is a creature of regulation, not statute, and thus it is subject to change at any time by the Alabama Department of Corrections.").

Given the protocol's potential state of flux, then, it is imperative that the law provide an opportunity for a prisoner to challenge his or her method of execution following any modification in the protocol that may lead to the potential for increased suffering. *Cf. Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008) ("Of course, in the event a state changes its execution protocol . . . the limitations period will necessarily accrue on the date that protocol change becomes effective."); *see Baze v. Rees*, 128 S. Ct. 1520, 1531-32 (2008) (plurality) (concluding execution procedures that create "a substantial risk of serious harm" or an "objectively intolerable risk of harm" have the potential to violate the Eighth Amendment). Numerous conceivable protocol changes—for example, a change in the type of drugs that Ohio administers in the current three-drug protocol—would clearly merit resetting the statute of limitations. But I also believe that a less obvious change to the

protocol could require a new accrual date as well if the amended protocol posed a "substantial risk of serious harm." *Baze*, 128 S. Ct. at 1531-32.

Instead of attempting to draw a not-so-bright-line rule related to "core complaints," I believe that a more practical rule can be found in an analogy to pleading standards. If the prisoner is able to make a prima facie showing that a modification to the protocol would cause increased likelihood of suffering, then the claim will accrue on the date the protocol was changed or when the prisoner could reasonably be expected to have notice of such changes. A mere "unadorned" claim that the change would cause an increased likelihood of harm would be insufficient; rather, the prisoner would be required to present "sufficient factual matter" to support the claim of increased harm. *Cf. Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (establishing pleading standards under Federal Rule of Civil Procedure 8). Such a rule would also extend to cases in which the prisoner was able to show a history of problems with the current protocol, regardless of whether there was a recent modification to the protocol at issue. *See, e.g.*, *Cooey II*, 479 F.3d at 423-24 (discussing the case of Joseph Clark where, despite being administered one of the protocol's drugs, Clark remained conscious and "repeatedly advised officials that the process was not working").

Applying this test to Getsy's case, I would find that the statute of limitations did not begin to run on his method-of-execution claim until the date that his execution became imminent; that is, on March 3, 2008, the date that the Supreme Court of the United States denied certiorari in his habeas appeal, *see Getsy v. Mitchell*, 128 S. Ct. 1475 (2008), or, April 8, 2009, the date the Ohio Supreme Court set his execution date. *State v. Getsy*, 903 N.E.2d 1221 (2009). Although the 2009 changes to Ohio's lethal-injection protocol had the potential to reset the statute of limitations and provide a later accrual date, as the majority points out, Getsy "has failed to make even a prima facie showing . . . of increased likelihood of suffering" with regard to those changes.[2] Such a deficiency, however, is of little import

---

[2] The new protocol states, in relevant part, that:

> [t]he Warden shall consider the needs of the condemned inmate, visitors and family members, the execution team, prison staff and others, and may make alterations and adjustments [to the protocol] . . . as necessary to ensure that the completion is carried out in a humane, dignified and professional manner.

In this case, I agree that the 2009 protocol changes were generally favorable to the prisoner and not of the type to create an increased likelihood of serious harm such that the statute of limitations should be reset following their adoption. It is worth cautioning, however, that should the Warden's consideration of the needs of others overwhelm the Warden's consideration of the needs of the condemned inmate and lead to an increased likelihood of serious harm to the condemned, it is possible that "sufficient factual

given the fact that Getsy filed his method-of-execution challenge in May 2007, well before his claim began to accrue for statute-of-limitations purposes. Consequently, under this rule, I would find that Getsy's challenge to his method-of-execution was timely.

I am compelled to point out that the present case is particularly troubling given the relative lack of clarity regarding the constitutionality of Ohio's method of execution. Importantly, the district court in this case has scheduled an evidentiary hearing on whether Ohio's lethal-injection protocol violates the Eighth Amendment to the Constitution under the standard the Supreme Court recently set forth in *Baze v. Rees*, 128 S. Ct. 1520 (2008) (plurality). That hearing is set for October 2009, only two months after Getsy's imminent August 18, 2009 execution date. Given the Supreme Court's recent guidance as to the type of scrutiny that courts should afford execution protocols to ensure their compliance with the Eighth Amendment's prohibition against cruel and unusual punishment, I find it unconscionable that by invoking a statute-of-limitations defense, the State should be able to execute a person by a procedure that a court may ultimately find cannot withstand constitutional scrutiny. Thus, it is with huge reservation and only because I am bound to apply the law of the Circuit that I am constrained to conclude that Getsy's claim is time barred under this court's view of the law in *Cooey II*.

Given the numerous concerns outlined above and contained within Judge Gilman's dissent in *Cooey II*, I believe that we should sua sponte grant en banc review of *Cooey II* by way of its application in Getsy's case.

---

matter" could support a claim that would warrant a reset of the accrual date.

———————————

**DISSENT**

———————————

MERRITT, Circuit Judge, dissenting.   This case is about the meaning and precedential scope of *Cooey v. Strickland*, 479 F.3d 412 (6th Cir. 2007) ("*Cooey II*"). Judge Gilman, the author of the majority opinion in the instant case, dissented from and strongly disapproves of the *Cooey II* decision, a case that expressly allows actions based on a new lethal injection "protocol."   And *Cooey* certainly does not even mention or attempt by any language or logic to foreclose actions when the Supreme Court creates a new cause of action or when new facts arise predicting severe pain in the upcoming lethal injection process.  Whatever defects my colleagues see in *Cooey II*, they are minor — a mere speck in the eye of justice — compared to their opinions that create a mote that cannot be removed without drastic surgery by the *en banc* court.  Rather than create such an intractable mess, it would have been much more reasonable and judicious to write an opinion along the following lines that does not use *Cooey II* to bar actions prematurely that deserve to be considered on the merits.

**I.**

In *Cooey II*, this Court held that when a prisoner brings a § 1983 challenge to a State's lethal-injection protocol, the date on which the statute of limitations begins to run — the so-called "accrual date" — is determined by three considerations:  (1) "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," *see* 28 U.S.C. § 2244(d)(1)(A), or (2) when lethal injection becomes the exclusive method of execution, whichever is later, unless (3) "the lethal injection protocol . . . changes" in a way that "relates" to the condemned prisoner's "core complaints" about the lethal-injection process. *See Cooey II*, 479 F.3d at 421-23. In *Cooey II*, the Court found that the second element — the date in 2001 when lethal injection became mandatory in Ohio — determined the accrual date, thus placing Cooey's complaint, which was filed in 2004, outside of the two-year statute of

limitations made applicable by federal case law to constitutional claims under § 1983. *See id.* at 424.

But Getsy argues that this reasoning is not the end of the case because two additional significant events distinguish his case from *Cooey II* and revise and extend the accrual date. The first is the Supreme Court's decision in *Baze v. Rees*, 128 S. Ct. 1520 (2008), which recognized for the first time the viability of an objection under the Eighth Amendment to a lethal-injection protocol that creates "a substantial risk of serious harm" or an "objectively intolerable risk of harm" when there is an "alternative procedure" that is "feasible, readily implemented, and in fact significantly reduce[s]" that substantial or objectively intolerable risk. *See id* at 1531-32 (plurality opinion). Getsy argues that this new rule of constitutional law resets the accrual date for such Eighth Amendment challenges. Second, and relatedly, Getsy also argues that he, unlike Cooey, is challenging a recent material alteration to Ohio's lethal-injection protocol and that the accrual date should be determined by reference to the date of that alteration.

## II.

To determine whether these arguments are precluded or approved by *Cooey II*, it is important to understand the nature of the doctrine of binding precedent, which has been a part of our judicial process since at least the time of Henry de Bracton, whose work *The Laws and Customs of England* was published in the thirteenth century. *See* SIR FREDERICK POLLOCK & FREDERIC WILLIAM MAITLAND, THE HISTORY OF ENGLISH LAW 183-84 (Lawyers Literary ed. 1959). This doctrine is especially necessary in the federal court of appeals, a multi-judge court, in which confusion would reign supreme and "the labor of judges would be increased almost to the breaking point if every past decision could be reopened in every case." *See* BENJAMIN CARDOZO, *Lecture IV: Adherence to Precedent*, in THE NATURE OF THE JUDICIAL PROCESS 149 (1920). Like cases must be decided alike, both for this prudential reason and because our judicial goal of fostering equal citizenship and equal status under the law requires it. Yet "in this perpetual flux [of cases], the problem which confronts the judge is . . . [that] he must first extract from the precedents the underlying principle, the *ratio decidendi*" of the case.

*Id.* at 28. My colleagues in the majority simply fail to try to narrow *Cooey II* to its essential holding.

In *Cooey II*, the Court analogized a § 1983 method-of-execution challenge to a petition for habeas corpus for the purpose of determining the accrual date. *See Cooey II*, 479 F.3d at 421-22. That is, the *ratio decidendi* of *Cooey II* is that the requirements set out in 28 U.S.C. § 2244(d)(1) determine the date upon which a § 1983 claim like this one accrues. That statute provides as follows:

The limitation period shall run from the latest of —

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

. . . .

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).[1]

The Court in *Cooey II* only applied subsection (A) because it was the only one relevant to that particular case. *Baze* had not yet been decided, and the 2009 amendments had not taken place, so the applicability of subsections (C) and (D) were neither argued nor considered, and it ignores the principle of extracting and applying the *ratio decidendi* of a case to interpret it to require us to ignore the other provisions of § 2244(d)(1). *Cooey II* does not stand for the rule that my colleagues claim, *i.e.*, that in all lethal-injection cases the statute of limitations expired two years after Ohio adopted lethal injection as the exclusive method of execution in 2001. It stands rather for the creation of a process that imports from the federal habeas corpus statute the accrual dates set out for the statute of limitations. Under those rules, when the whole process set out

---

[1]Subsection (B) is not relevant to this case, and therefore is elided.

in *Cooey II* is properly used, Getsy's case is viable and well within the statute of limitations *if it fits within the criteria laid out in subsections (C) or (D).*

## A. Subsection (C)

Subsection (C) has three elements:  the claimant must (1) assert a constitutional right, (2) that has been "newly recognized by the Supreme Court" and (3) "made retroactively applicable to cases on collateral review."  Those elements are present here. In *Baze*, the plurality made clear that the question before it was one of first impression, and that the Court had "never invalidated a State's chosen procedure for carrying out a sentence of death as the infliction of cruel and unusual punishment."  *Baze*, 128 S. Ct. at 1530.  The Court had previously upheld every type of execution method, from hanging to shooting to electrocution.  *See id.* at 1526-27, 1530.  But in *Baze* it recognized that execution by lethal injection could violate the Eighth Amendment if it involves a "demonstrated risk of severe pain" that is "substantial when compared to the known and available alternatives."  *Id.* at 1537.

Justices Thomas and Scalia observed that this "formulation of the governing standard" found "no support in the original understanding of the cruel and unusual punishment clause or in any of our previous method-of-execution cases," *id.* at 1556 (Thomas, J., concurring in the judgment), because no case had previously suggested that capital punishment would be unconstitutional if "it involve[d] a risk of pain — whether 'substantial,' 'unnecessary,' or 'untoward' — that could be reduced by adopting alternative procedures," *id.* at 1560.  Justice Thomas went on to observe that the new "formulation" of the standard was more lenient than the Sixth Circuit's previous formulation in *Workman v. Bredesen*, 486 F.3d 896, 907 (6th Cir. 2007), which required an intent to create pain.  The separate opinions of Justice Stevens, Justice Breyer, and Justice Ginsburg (joined by Justice Souter) likewise make clear that the plurality opinion creates a "newly recognized" constitutional right, which in their views arise from the doctrine that, with respect to capital punishment, the Eighth Amendment "'must draw its meaning from the evolving standards of decency that mark the progress of a maturing

society.'" *See id.* at 1568 (Ginsburg, J., dissenting) (quoting *Atkins v. Virginia*, 536 U.S. 304, 311-12 (2002)).

The Court also made clear that the new standard would apply to all condemned prisoners awaiting execution by lethal injection. The plurality discusses at some length how the new formulation should be "implemented" with respect to stays of execution. *See id.* at 1537-38 (plurality opinion). Justice Alito's concurrence fleshes these principles out further. *See id.* at 1538-42 (Alito, J., concurring). It is clear that they contemplate the *Baze* formulation applying to all challenges to lethal-injection protocols, whether those challenges are brought on direct appeal or — far more likely — by prisoners whose direct appeals have become final. Thus, the Supreme Court has now created a "newly recognized" constitutional right "made retroactive to cases on collateral review." Absent a later date made applicable by subsection (D), the accrual date for challenges of this sort would be the date of the Supreme Court opinion in *Baze*, April 16, 2008. We are not called upon to apply the new formulation to the present case on the merits and should leave that in the first instance to the District Court on remand. It is clear, however, that under this new accrual date, Getsy's claim is not barred by the two-year statute of limitations.

## B. Subsection (D)

Getsy also asserts that the May 2009 changes to Ohio's lethal-injection protocol grant the Warden broad discretion to determine the execution procedures used, thereby increasing the risk of unconstitutional execution. The new protocol states:

> o. The Warden shall consider the needs of the condemned inmate, visitors and family members, the execution team, prison staff and other, and may make alterations and adjustments to this or other policies as necessary to ensure that the completion of the execution is carried out in a humane, dignified and professional manner.

May 14, 2009, Execution Protocol Number 01-COM-11, superseding 01-COM-11 dated Oct. 11, 2006. Getsy contends that, under this new discretionary standard, neither avoidable, severe pain nor intentionally inflicted pain is ruled out once the execution is under way, if such

pain would ensure that the execution was completed. We need not decide the merits of this contention, but only whether the argument is time-barred under *Cooey II*.

It may be that Getsy's argument creates an issue "related" to his "core complaints," and thus falls within the exception created by the express language of *Cooey II* itself. But whatever the meaning of *Cooey II* on this point, it is beyond doubt that a challenge to the amended protocol falls within § 2244(d)(1)(D), since the new May 2009 protocol provides a new "factual predicate" that could not "have been discovered through the exercise of due diligence" prior to its passage. To state the problem more clearly, imagine that a defendant is sentenced to death in 1996. In 2001, the State adopts lethal injection as its sole method of execution. In 2009, it decides to cut costs by halving the dosage of each drug that it uses in its three-dug protocol, and further decides that the drugs will be administered by first-year medical students who perform the procedure for free. Imagine further that the several people who are executed under this new protocol suffer a prolonged and excruciating death. If our defendant then seeks to challenge this newly amended protocol, it would seem absurd to read *Cooey II* to require a court to find that the challenge became time-barred in 2003, despite the fact that the challenge specifically attacks changes that were made in 2009. The merits of Getsy's challenge may be weaker than those laid out in this hypothetical. But the statute-of-limitations question is the same. When a prisoner challenges a change in a State's method of execution, that change provides a new "factual predicate" that resets the two-year statute of limitations. As all of the opinions in *Baze* make clear, the constitutionality of a particular method of execution will depend on the specific factual details of its administration. Thus, a change to those details resets the accrual date for a constitutional challenge. *See Walker v. Epps*, 550 F.3d 407, 414-15 (5th Cir. 2008) ("Of course, in the event a state changes its execution protocol after a death-row inmate's conviction has become final, the limitations period will necessarily accrue on the date that protocol becomes effective.").

Getsy's execution, which is currently scheduled for August 18th, should be temporarily stayed pending the District Court's resolution of the merits of Getsy's claim under the standard set out in *Baze*.