RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0317p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

————————————

ROMELL BROOM,

          *Plaintiff-Intervenor/Appellant,*

*v.*

TED STRICKLAND et al.,

          *Defendants-Appellees.*

No. 08-4200

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 04-01156—Gregory L. Frost, District Judge.

Submitted: July 21, 2009

Decided and Filed: September 1, 2009

Before: BATCHELDER, Chief Judge; MOORE and GIBBONS, Circuit Judges.

————————————

**COUNSEL**

**ON BRIEF:** Timothy F. Sweeney, LAW OFFICE OF TIMOTHY FARRELL SWEENEY, Cleveland, Ohio, S. Adele Shank, LAW OFFICE OF S. ADELE SHANK, Columbus, Ohio, for Appellant. Charles L. Wille, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees.

————————————

**OPINION**

————————————

KAREN NELSON MOORE, Circuit Judge. Romell Broom appeals the district court's dismissal of his 42 U.S.C. § 1983 challenge to Ohio's method of execution. Upon examination of the record and briefs, this panel unanimously agrees that oral argument is not necessary. Fed. R. App. P. 34(a). For the reasons set forth below, we **AFFIRM** the judgment of the district court.

1

Broom was convicted of aggravated murder and sentenced to death on October 16, 1985. *Broom v. Mitchell*, 441 F.3d 392, 396 (6th Cir. 2006), *cert. denied*, 549 U.S. 1255 (2007). In 2007, he filed an intervenor complaint in a § 1983 lawsuit challenging Ohio's lethal-injection protocol brought by fellow death-sentenced inmate, Richard Cooey. After this court determined that Cooey's challenge was time barred, *Cooey v. Strickland*, 479 F.3d 412, 424 (6th Cir. 2007) (*Cooey II*), *cert. denied*, 128 S. Ct. 2047 (2008), the district court dismissed Broom's complaint on the same grounds.

Broom argues that his claim is not barred under *Cooey II* for the following reasons: (1) *Cooey II* was wrongly decided; (2) the continuing-violations doctrine governs method-of-execution challenges; (3) *Cooey II* is a new rule of law with prospective force only; (4) *Cooey II* adopted the statute-of-limitations provisions set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and his claim is considered timely under that statute; and (5) he is entitled to equitable tolling. Broom also argues that any factual questions regarding the applicability of AEDPA's statute of limitations entitle him to an evidentiary hearing.

## I.

A thorough review of the record reveals that Broom's arguments as to why *Cooey II* was wrongly decided and should not be applied in his case are the same as or encompassed within those that this court recently addressed and rejected in *Getsy v. Strickland*. *See Getsy v. Strickland*, — F.3d —, No. 08-4199, 2009 WL 2475165 (6th Cir. Aug. 13, 2009), *reh'g en banc denied*, 2009 WL 2496573 (6th Cir. Aug. 17, 2009), *cert. denied*, No. 09-5935, 2009 WL 2490098 (Aug. 17, 2009). As for Broom's arguments that this court has not addressed previously, we also find those unavailing.

First, we disagree with Broom's assertion that the continuing-violations doctrine tolls the statute of limitations because "[t]he legal violation continues anew every single day that . . . the same deficient [lethal-injection] protocol . . . remain[s] in place." Appellant Br. at 26. "[A] 'continuous violation' exists if: (1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiffs accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided. *Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009) (citations omitted). "A continuing violation

is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (internal quotation marks and alteration omitted). Broom has not alleged "continual unlawful acts," but rather challenges the effects from the adoption of the lethal-injection protocol. In essence, he has presented no continued wrongful conduct, only the continued risk of future harm. *See Walker v. Epps*, 550 F.3d 407, 417 (5th Cir. 2008) ("The challenged protocol will affect each plaintiff but once. Under these circumstances, the protocol does not constitute a continuing tort."). Furthermore, Broom has not explained how his claim of a continuing violation would not conflict with the conclusion of the panel in *Cooey II* as to when the injury accrued. *See Cooey II*, 479 F.3d at 421 (implicitly rejecting the application of the doctrine when the only continued harm alleged is the continued existence of the protocol).

Second, contrary to Broom's assertion that the statute of limitations set forth in *Cooey II* constitutes a "new rule of law" that cannot be applied retroactively under *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07 (1971), this is not the case. As an initial matter, Broom was a party to the litigation in which a panel of this court announced the rule in *Cooey II*. Even assuming, however, that *Cooey II* established a "new rule of law" and that retroactivity analysis is proper, Broom's reliance on *Chevron Oil* in arguing against retroactivity is "based on an incorrect understanding of current Supreme Court precedent." *Hatchett v. United States*, 330 F.3d 875, 882 (6th Cir. 2003), *cert. denied*, 541 U.S. 1029 (2004). The Supreme Court has largely "abandoned the balancing test articulated in *Chevron Oil*, [and] develop[ed] a new standard for determining retroactivity in civil cases." *Id.* The later standard, announced by the Court in *Harper v. Virginia Department of Taxation*, 509 U.S. 86 (1993), is a "strict rule requiring retroactive application of new decisions to all cases still subject to direct review." *Allied Stores Corp. v. Federated Dep't Stores, Inc. (In re Federated Dep't Stores, Inc.)*, 44 F.3d 1310, 1317 (6th Cir. 1995); *see also Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 759 (1995) (limiting the circumstances under which only prospective application is appropriate and indicating that it requires more than hardship or inequity caused by reliance); *Harper*, 509 U.S. at 95 n.9. There is nothing in *Cooey II* to indicate that the court intended to depart from the general rule of retroactivity and apply the statute of limitations only prospectively. Additionally, this court has since applied the rule of *Cooey II* to Broom's fellow intervenor, Jason Getsy. *See Getsy*, 2009 WL 2475165, at *1.

Third, Broom's argument that *Cooey II* fully adopted AEDPA's statute-of-limitations provisions and that his suit is therefore timely under 28 U.S.C. § 2244(d)(1)(B), (C), and (D), is also unavailing. *See Cooey II*, 479 F.3d at 420–21 (referencing the federalism and comity principles underlying AEDPA in establishing a statute of limitations). Even assuming AEDPA's applicability to a § 1983 challenge beyond that expressly stated in *Cooey II*, both *Cooey II* and *Getsy* foreclose Broom's argument on the facts that Broom has presented.

Broom argues that the Ohio Department of Rehabilitation and Correction's ("ODRC") "refusal to fully disclose the relevant details concerning execution protocols" constituted a state "impediment" to his filing suit so as to toll the statute of limitations under § 2244(d)(1)(B) of AEDPA. Appellant Br. at 33. *See* 28 U.S.C. § 2244(d)(1)(B) (providing one year to file a habeas corpus petition from the date on which a state removes an impediment to filing). But *Cooey II* indicated that despite the failure of the ODRC to reveal details concerning execution protocols, Cooey and other similarly situated death-sentenced prisoners had the information required to file their claims no later than December 2001, when lethal injection became the sole method of execution in Ohio. *See Cooey II*, 479 F.3d at 422. As a result, Broom's claimed "impediment" cannot work to provide a different statute of limitations here. For the same reason, Broom's reliance on § 2244(d)(1)(D) is likewise misplaced. Given that *Cooey II* held that death-sentenced prisoners had all the relevant facts related to their claims by December 2001, notwithstanding the 2006 protocol revisions, the newly released information regarding the specifics of the lethal-injection protocol does not serve as a new "factual predicate" under AEDPA. *See* 28 U.S.C. § 2244(d)(1)(D) (establishing a one-year statute of limitations from the time at which a habeas petitioner could have become aware of the factual predicate of his or her claim); *see also Getsy*, 2009 WL 2475165, at *3–4 (discussing protocol changes made in 2009).

Again, to the extent that AEDPA provisions are even applicable, we also reject Broom's argument as to the applicability of § 2244(d)(1)(C). *See* 28 U.S.C. § 2244(d)(1)(C) (allowing a habeas petitioner to file one year from when the Supreme Court recognizes a new, retroactive constitutional right). Broom argues that the holding of the Lorain County Court of Common Pleas that the potentially painful three-drug lethal-injection protocol violates the Fifth and Fourteenth Amendments to the Constitution because Ohio law

mandates that a prisoner's death be painless, *see State v. Rivera*, No. 04CR065940, at 8 (Lorain Ct. Com. Pl. 2008), can constitute the source of this new right. Although Broom concedes that the state court's ruling "does not constitute a new constitutional rule in the classical sense," he argues for § 2244(d)(1)(C)'s applicability nonetheless. Appellant Br. at 35. We simply disagree. AEDPA's plain text requires a constitutional right "newly recognized by the Supreme Court." 28 U.S.C. § 2244(d)(1)(C). Thus, the decision of the Common Pleas court is inapposite.

Finally, Broom further invokes AEDPA to assert that "a court may grant equitable tolling to preclude an inequitable application of the SOL to a habeas petition" and that he is entitled to such tolling for his § 1983 claim. Appellant Br. at 38. Broom argues that the "uncertainty of the law"; the fact that a timely motion, defined by *Cooey II*, "would have been dismissed by the [district] court as unripe"; the ODRC's delay in providing the relevant information; counsel's negligence in failing to timely file; and the "fact that this is a capital case" all justify equitable tolling. *Id.* at 39–41. We disagree. To the extent that equitable-tolling principles apply, we conclude that Broom's reasons are insufficient to establish that he warrants tolling. The essence of Broom's argument, is, at bottom, another iteration of his argument that *Cooey II* was wrongly decided.

## II.

Having considered all of Broom's arguments, we conclude that, as the panel in *Getsy* was constrained by the statute-of-limitations rule set forth in *Cooey II*, so are we. *See Getsy*, 2009 WL 2475165, at *3. *Cooey II* held that "the two-year statute of limitations for a § 1983 lawsuit challenging Ohio's lethal-injection protocol begins to accrue on the latest of the following possible dates: (1) 'upon conclusion of direct review in the state court or the expiration of time for seeking such review,'[1] or (2) in 2001, when Ohio adopted lethal injection as the sole method of execution." *Id.* at *1 (quoting *Cooey II*, 479 F.3d at 422). The direct review of Broom's sentence and conviction concluded when the United States Supreme Court denied certiorari on May 15, 1989. *Broom v. Ohio*, 490 U.S. 1075 (1989). Because Ohio did not adopt lethal injection as the sole method of execution until

---

[1]Direct review includes review by the Supreme Court of the United States or the expiration of the ninety-day period to seek such review. *See Cooey II*, 479 F.3d at 422 n.6.

2001, under the doctrine announced in *Cooey II*, Broom had until December 2003, at the latest, to file his challenge to the procedure. *See Cooey II*, 479 F.3d at 422. As a result, Broom's 2007 challenge was time barred under *Cooey II*.

### III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.