**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0688n.06

**No. 10-6196**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| STEPHEN MICHAEL WEST, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GAYLE RAY, in her official capacity as Tennessee's | ) | |
| Commissioner of Correction; RICKY BELL, Warden, | ) | |
| in his official capacity as Warden of Riverbend | ) | |
| Maximum Security Institution; DAVID MILLS, in his | ) | On Appeal from the United States |
| official capacity as Deputy Commission of Tennessee | ) | District Court for the Middle |
| Department of Correction; MARK LUTTRELL, | ) | District of Tennessee |
| Director, in his official capacity as Assistant | ) | |
| Commissioner of Operations; JOHN DOE, Physicians | ) | |
| 1-100; JOHN DOE, Pharmacists 1-100; JOHN DOE, | ) | |
| Medical Personnel 1-100; JOHN DOE, Executioners | ) | |
| 1-100; JOHN DOES, 1-100; REUBEN HODGE, | ) | |
| Warden, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

Before:     BOGGS, NORRIS, and MOORE, Circuit Judges.

BOGGS, Circuit Judge.  Stephen Michael West is scheduled to be executed by the State of Tennessee on November 9, 2010.  West challenged the state's lethal injection protocol in district court, and we affirm the district court's dismissal of his complaint.

I

On August 19, 2010, West filed a complaint in district court and made two categories of claims.  First, West brought a number of specific claims under 42 U.S.C. § 1983, all alleging that

Tennessee's lethal injection protocol violates his rights under the Eighth and Fourteenth Amendments. Second, West requested a declaratory judgment that the state's lethal injection protocol violates the Federal Controlled Substances Act and the Federal Food, Drug, and Cosmetic Act.

On September 23, 2010, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants argued that West lacked standing to challenge Tennessee's lethal injection protocol because, on February 21, 2001, he signed an affidavit in which he chose to be executed by electrocution. Defendants also argued that West's complaint was barred by the statute of limitations.

On September 24, 2010, the district court dismissed West's § 1983 claim. In reaching its conclusion, the court did not consider Defendants' standing argument because that argument relied on the existence of an affidavit which was not part of the complaint. Instead, the court considered only the statute-of-limitations issue in disposing of the claim. Tennessee has a one-year statute of limitations for civil actions brought under federal civil-rights statutes and the district court applied this court's decision in *Cooey II* to hold that West's petition was time-barred by the Tennessee statute. *See Cooey v. Strickland (Cooey II)*, 479 F.3d 412 (6th Cir. 2007); TENN. CODE § 28-3-104(a)(3).

West made two arguments against this conclusion. First, West argued that the Supreme Court's decision in *Baze v. Rees*, 553 U.S. 35 (2008), abrogated *Cooey II*. The district court rejected this argument, noting that this court has continued to apply *Cooey II* after *Baze*, and that in *Getsy v. Strickland*, this court rejected the argument that *Baze* affects *Cooey II*. *See Getsy*, 577 F.3d 309, 312

(6th Cir. 2009. Second, West argued that *Cooey II* was wrongly decided. The district court rejected this argument as well, noting that it was bound by *Cooey II.*

The district court also dismissed West's declaratory judgment claim and, accordingly, dismissed the case. West filed this timely appeal on September 29, 2010. In his brief, West argues only that the district court erred in dismissing his § 1983 claim. Appellant's Br. at 2. The dismissal of West's declaratory judgment claim is therefore not at issue in this appeal. *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 462 (6th Cir. 2003) ("An appellant waives an issue when he fails to present it in his initial briefs before this court.").

Since West filed his appeal, the parties have taken a number of steps that have combined to complicate the procedural history of this case. Accordingly, a step-by-step summary of those steps is necessary.

On October 6, 2010, West filed his opening appellate brief, in which he argued that *Cooey II* was not good law.

On October 12, West executed a rescission of his 2001 affidavit and presented that rescission to the prison warden. The warden apparently did not accept the validity of West's rescission.

The next day, Defendants filed their appellate brief, in which they responded to West's *Cooey II* arguments and also raised two alternate grounds for dismissal, that West lacks standing to challenge the lethal injection protocol because he chose to be electrocuted, and that binding precedent has established the constitutionality of Tennessee's lethal injection protocol.

That same day, West requested that the Tennessee Department of Corrections ("TDOC") confirm that West's execution was to be carried out by electrocution.

On October 15, TDOC confirmed that it considered his 2001 affidavit to be in full effect.

On October 18, West filed suit in state court, challenging the validity of the 2001 affidavit.

That same day, West filed his reply brief, in which he argued that this appeal must be held in abeyance until the state court resolved the affidavit issue, that the last-minute confusion demonstrates that *Cooey II* was wrongly decided, and that this case is distinguishable from the cases that Defendants rely on. West also filed a motion in this court, requesting that we hold this case in abeyance and stay his execution, pending the resolution of the state court proceedings.

On October 20, Defendants reversed course and accepted West's rescission of the affidavit and stated that, because of West's rescission, his execution will be carried out by lethal injection. As a result, West withdrew his state court challenge to the validity of the affidavit.

On October 26, West filed another motion in this court. West moved to withdraw his previous motion and, more significantly, requested that we vacate the district court's order for lack of jurisdiction and remand with instructions to dismiss without prejudice so that he can file his claim again.

West's briefs and motions suggest that he relies on the following multi-step argument. First, because the state intended to electrocute him, in compliance with his 2001 affidavit, West lacked standing to bring his challenge to the state's lethal injection protocol. Second, because he lacked standing, the district court lacked jurisdiction to dismiss his complaint on statute-of-limitations grounds. And because the district court lacked jurisdiction to dismiss his complaint, this court must vacate that dismissal. Third, because Defendants accepted his rescission of the 2001 affidavit on October 20, he now–for the first time–has standing to challenge the state's lethal injection protocol.

And fourth, because he now has standing, this court should order the district court to dismiss his claim without prejudice so that he can refile the same claim now that he has standing to do so and, presumably, *Cooey II* will no longer bar his complaint. We disagree with this theory of the case and affirm the decision of the district court.

II

We hold that the district court properly exercised its jurisdiction to dismiss West's complaint. Although a district court–like all federal courts–must first determine its own jurisdiction before proceeding to the merits, the scope of the required jurisdictional inquiry may be limited by the procedural posture of the case. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). When deciding a 12(b)(6) motion to dismiss, the court must accept all allegations in the pleadings as true, and in this case, West's pleading–which repeatedly alleges that Defendants plan to execute him by lethal injection– clearly supports a finding that he had standing to challenge the protocol. *Ibid*.; *Kardules v. City of Columbus*, 95 F.3d 1335, 1346-47 (6th Cir. 1996) (holding that, when determining whether standing exists when considering a 12(b)(6) motion to dismiss, the court "must accept as true all material allegations of the complaint") (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)); Complaint, R. 1 at 1 ("Stephen Michael West is a condemned inmate scheduled to be executed by lethal injection . . . ."); *id*. at 10 ("The State of Tennessee . . . seeks to execute Mr. West . . . by lethal injection."). Accordingly, the district court properly exercised its jurisdiction to dismiss West's complaint pursuant to Rule 12(b)(6). If the law were otherwise–that a district court were required to resolve conflicting outside evidence to ensure that it had jurisdiction every time it ruled on a Rule 12(b)(6) motion–then the economy provided by Rule 12(b)(6) would be entirely lost.

Further, even if the district court should have considered the entire record, there was–and remains–insufficient evidence in the record to conclude that West lacked standing to challenge the lethal injection protocol. Although Defendants maintained that West's 2001 affidavit was valid, West argued otherwise. Although the point is now moot as Defendants have since accepted West's rescission, the state court never had the opportunity to determine whether the affidavit did, in fact, remain valid. Accordingly, there is no factual basis to support a conclusion that, even considering the entire record, the district court was without jurisdiction to dismiss West's complaint. And significantly, there is also no clear legal basis to support such a conclusion, as this circuit has never held that a death row inmate lacks Article III standing to challenge a particular method of execution where he has chosen an alternative method. It is not obvious that such a holding would be correct, and in any case, we need not decide that issue here. *But see Fierro v. C.A. Terhune*, 147 F.3d 1158, 1160 (9th Cir. 1998) (holding that an inmate lacks standing to challenge a method of execution if he has elected to be executed by another method).

III

The district court properly applied *Cooey II* to dismiss West's complaint. *Cooey II* ruled that the accrual date for method-of-execution claims is when the inmate "knew or should have known [of the method of execution] based upon a reasonable inquiry, and could have filed suit and obtained relief," which will ordinarily be the date of conclusion of direct review. 479 F.3d at 421-22. Because Cooey's direct review had concluded before the method of execution was established, the court held that an alternative accrual date was required, and that the alternative date could have been either the date the method of execution was established or the date that the method of execution

became the sole method. *Id*. at 422. The court did not decide which of these two possibilities was the correct alternative accrual date because Cooey's complaint would have been time-barred either way. *Ibid*.

Here, direct review of West's death sentence and underlying conviction concluded on June 25, 1990, when the Supreme Court denied West's petition for a writ of certiorari. *West v. Tennessee*, 497 U.S. 1010 (1990). Tennessee adopted lethal injection as a method of execution on May 18, 1998. TENN. CODE § 40-23-114; 1998 TENN. PUB. ACTS 982. Two years later, Tennessee adopted lethal injection as the presumptive method of execution, on March 30, 2000. TENN. CODE § 40-23-114; 2000 TENN. PUB. ACTS 614. *See Henley v. Little*, 308 F. App'x 989 (6th Cir. 2009).

Applying *Cooey II*, the district court correctly concluded that West's complaint was time-barred. Because West's direct review concluded before Tennessee established lethal injection as a method of execution, that date can not be the accrual date. *Cooey II*, 479 F.3d at 422. Here, the two alternative accrual dates are May 18, 1998, when Tennessee established lethal injection as a method of execution, and March 30, 2000, when Tennessee established lethal injection as its presumptive method of execution. *Henley*, 308 F. App'x at 989. And, as was the case in *Cooey II*, this panel need not decide which of these possible alternative dates was the accrual date here, as either way, West's complaint is time-barred by Tennessee's one-year statute of limitations.[1]

---

[1]The dissent's timeliness analysis, whatever its wisdom, is simply not that established by *Cooey II*. Although *Cooey II* and *Getsy* both acknowledge the possibility that a revised protocol could reset the accrual date, both held that–at the very least–the plaintiff must make some showing that the "protocol *modifications* might create undue suffering." *Getsy*, 577 F.3d at 313; *Cooey II*, 479 F.3d at 424. West made no claim that the 2007 modifications–or any other change in practice–somehow related to his "core complaints" and is therefore in the exact same position as

The district court also correctly concluded that *Baze* did not abrogate *Cooey II*, as this court has already rejected that argument. In *Getsy v. Strickland*, this court held that "*Baze*'s freshly clarified standards" do not trigger a new accrual date because

> in determining when the cause of action accrues in § 1983 cases, we look to the event that should have alerted the typical lay person to protect his or her rights. *Cooey II* held, rightly or wrongly, that the relevant date is the later of either (1) the conclusion of direct review . . . , or (2) . . . when Ohio adopted lethal injection as the sole method of execution. Nothing in *Baze* gives us cause to question *Cooey II*'s determination of when the statute-of-limitations clock begins to tick.

577 F.3d at 312 (internal quotations and citations omitted). In his brief, West argues that the district court's reliance on *Getsy* was misplaced. West notes that, in *Getsy*, the court rejected the appellant's argument that *Baze* created a new cause of action, and that here, West does not make that same argument. Appellant's Br. at 13-14. True enough. But the *Getsy* court also held that *Baze* did not disrupt *Cooey II*'s accrual test. 577 F.3d at 312. West makes no attempt to address this aspect of the *Getsy* decision–upon which the district court explicitly relied–and, like the district court, we are

---

were Cooey and Getsy. *See Cooey II*, 479 F.3d at 424. And, of course, even if he had made such a showing and we were to hold that the accrual date reset to the date of the modifications, then the one-year statute of limitations would have still expired. *Cf. Workman v. Bredesen*, 486 F.3d 896, 899 (6th Cir. 2007) (holding that Tennessee's 2007 protocol modifications were not material and do not reset the statute of limitations). The dissent goes much further than the possibility suggested by *Cooey II* and *Getsy*, however, and argues that the accrual date should reset not to the date of the revisions, and not even to the date of the first troubling autopsy, but to the date of the *second* troubling autopsy. This approach looks to the strength of the evidence in support of a claim, and not when direct review concluded or the method was established–thereby forming the claim–which was this court's holding in *Cooey II*. 479 F.3d at 421-22. Further, the "death by suffocution" claim is not new. *See Workman*, 486 F.3d at 925-26. Because a plaintiff may always be able to point to a new piece of evidence in support of a preexisting claim, as West does here, the dissent's attempted distinction would seriously undermine *Cooey II*'s holding in most cases.

bound by the *Getsy* panel's decision. Similarly, we can not consider West's argument that *Cooey II* was wrongly decided. *Getsy*, 577 F.3d at 314; *Wilson v. Rees*, 620 F.3d 699, 701 (6th Cir. 2010).

IV

We further hold that a dismissal without prejudice would serve no purpose here, as even if West could demonstrate that he lacked standing to challenge the protocol from the time he executed his affidavit on February 21, 2001, until October 20, 2010, when Defendants accepted his rescission of the affidavit, the statute of limitations would still bar his complaint. Whether or not West lacked standing–due to his own actions–simply does not speak to the question of when the statute of limitations accrued, or once it accrued, when time expired.

West argues that he lost his standing to challenge the lethal injection protocol when he chose to be executed by electrocution in 2001, and, when he revoked that selection less than three weeks before his execution date, his standing sprang back to life. We need not decide whether this theory of springing standing accurately reflects this law in the circuit, but we do hold that any related theory of a springing statute of limitations is foreclosed by *Cooey II.*

*Cooey II* held that the statute of limitations clock begins ticking on the date of conclusion of direct review or, if later, when the method of execution is established. 479 F.3d at 422. An inmate cannot stop or reset that clock by later choosing an alternate method of execution, as such a choice does not impact the question of whether, on the accrual date, he knew or should have known whether the method of execution was in existence and could have chosen to seek relief.[2] *See ibid.* Here, the

[2]Even if West's choice in 2001 stripped him of standing to challenge lethal injection, had he wished to challenge the constitutionality of lethal injection, he could have simply not chosen to be executed by electrocution and proceeded with his suit. Therefore, West "could have filed suit and

statute of limitations on a § 1983 challenge to Tennessee's lethal injection protocol began to accrue either on May 18, 1998–in which case West's claim became time-barred nearly two years before he selected electrocution as his method of execution–or on March 30, 2000, when lethal injection became Tennessee's presumptive method of execution. As in *Cooey II*, we need not decide which is the correct accrual date, as even if the later date is used, then whatever choices West made *subsequent* to that date cannot change the fact that the statute of limitations had already begun to accrue. *See Getsy*, 577 F.3d at 313-14 (holding that post-accrual vacation and reinstatement of conviction "is irrelevant to the accrual of Getsy's § 1983 claim"). Therefore, West's suit became time-barred no later than March 30, 2001, five weeks after West elected to be executed by electrocution. Because West's complaint is time-barred even if his theory of standing is accepted, his request for a dismissal without prejudice would serve no purpose.

V

For the foregoing reasons, we AFFIRM the district court's dismissal of West's complaint and DENY West's request for a dismissal without prejudice.

---

obtained relief" within one year of the accrual date. *Ibid*. That he instead chose a path that may have stripped him of standing to challenge the protocol does not speak to the question of whether he could have–had he chosen to do so–filed suit and obtained relief.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** Until this year, it was impossible for West to have learned that Tennessee's lethal-injection protocol has become, in practice, death by suffocation. His claim is timely even under the unduly restrictive standard articulated in *Cooey II v. Strickland*, 479 F.3d 412 (6th Cir. 2007). Because West's claim is timely, I respectfully dissent.

After holding that the *Cooey II* time bar remained in effect following the Supreme Court's decision in *Baze*, this court in *Getsy* proceeded to analyze the Ohio "protocol modifications" that Getsy alleged would "create undue suffering." *Getsy v. Strickland*, 577 F.3d 309, 313 (6th Cir. 2009). That analysis was not superfluous. Developments in execution protocol or practice after the *Cooey II* dates can be the basis for later method-of-execution claims. We held for the Ohio warden because "Getsy [did] not ma[k]e a prima facie showing that the . . . modifications will likely subject him to extreme pain based on . . . new evidence." *Id.*

West has accomplished what Getsy did not. After Tennessee's protocol change, the autopsy of Phillip Workman revealed inadequate post-mortem sodium thiopental levels. This single occurrence might have been "an isolated mishap alone," which "does not give rise to an Eighth Amendment violation." *Baze v. Rees*, 553 U.S. 35, 50 (2008) (Roberts, J., plurality op.). But on March 10, 2010, the state released the autopsy results for its next-executed inmate, Steven Henley. Henley, too, had deficient sodium thiopental levels, giving West a basis to allege that, as implemented, the lethal-injection protocol violates the Eighth Amendment. Until Henley's autopsy confirmed the problem, West did not have a cause of action because "the conditions presenting the risk" of suffocation were not "*sure or very likely* to cause serious illness and needless suffering." *Baze*, 553 U.S. at 50. And prior to the autopsy, "the typical lay person," *Getsy*, 577 F.3d at 312,

- 11 -

could not have been alerted that the standard three-drug cocktail would suffocate its recipients. The key feature of this case is that West has alleged new evidence showing that the *practice* of the lethal-injection method in Tennessee has caused extreme pain and suffering, constituting a violation of the Eighth Amendment.

That *Getsy* left the *Cooey II* accrual test intact is of no consequence to this case. Even under *Cooey II*, West's challenge is timely because he could not have challenged the practice of the lethal-injection method until evidence became available that it constituted cruel and unusual punishment. This approach is fully consistent with *Cooey II* and, indeed, is required by the Eighth Amendment.

West should prevail under *Cooey II*. He has challenged the constitutionality of death by suffocation, the possibility of which was unknown both at the close of direct review and when lethal injection became the presumptive method of execution in Tennessee. The majority improperly requires death-row inmates to challenge the constitutionality of every method of execution that the state may use—far in advance of newly developing evidence that the method of execution in practice results in cruel and unusual punishment in violation of the Eighth Amendment. I respectfully dissent from this incorrect application and extension of *Cooey II*.

For these reasons, I would grant a stay of execution and also dissent from the majority's denial of a stay.