[Cite as *State ex rel. Nickoli v. Erie MetroParks,* 124 Ohio St.3d 449, 2010-Ohio-606.]

THE STATE EX REL. NICKOLI ET AL. *v.* ERIE METROPARKS ET AL.

[Cite as *State ex rel. Nickoli v. Erie MetroParks,*

**124 Ohio St.3d 449, 2010-Ohio-606.]**

*Mandamus — Appropriation proceedings — Res judicata — Claim of interference with property rights was barred by statute of limitations — Claimed interference was a one-time event, not a continuing violation.*

(No. 2009-0026 — Submitted December 1, 2009 — Decided February 25, 2010.)

IN MANDAMUS.

_____

**LUNDBERG STRATTON, J.**

**{¶ 1}** This is an original action for a writ of mandamus to compel a park district and its board of commissioners to commence appropriation proceedings for property allegedly seized and occupied by the district. We deny the writ because (1) res judicata neither entitles relators to the requested extraordinary relief nor prevents the park district and its board of commissioners from raising defenses that they did not raise in a previous mandamus action involving different relators and (2) the statute of limitations in R.C. 2305.09(E) bars relators' takings claim.

## I. Facts

**{¶ 2}** The historical background of the property involved and the previous litigation regarding the property are essential to understanding the posture of this case.

### A. History

1. The Canal Company and the Railroad Lease

**{¶ 3}** In 1827, the General Assembly chartered the Milan Canal Company to construct and operate a canal from Milan, Ohio, to the Huron River.

The act incorporating the canal company gave it authority "to enter upon, and take possession of any lands, waters and streams necessary to make said canal" and provided that "a complete title to the premises, to the extent and for the purposes set forth in or contemplated by this act, shall be thereby vested and forever remain in said company, and their successors." Section 8, Act of January 24, 1827, 25th General Assembly, Ohio Laws 96-97.

{¶ 4} Noncontiguous tracts of land from Ebeneser Merry and Kneeland Townsend were acquired by the canal company as part of the canal corridor. In 1881, the canal company entered into a 99-year lease with the Wheeling & Lake Erie Railway Company for a 150-foot-wide right-of-way to construct and operate a railroad. The lease was renewed in 1980 for another 99 years.

{¶ 5} The canal company was dissolved in 1904, and its property interests devolved to a testamentary trust and its trustee, Key Trust Company of Ohio. The dissolution order specified that the canal company owned land "within the bounds of a strip of land one hundred and fifty feet in width, commencing at the southerly end of the canal basin of said Milan Canal Company * * * and running thence in a northerly direction to the mouth of the Huron River, * * * the east and west lines of said strip of land being one hundred and fifty feet apart and running north parallel with each other and with the central line of said railroad, as surveyed, located and being constructed."

{¶ 6} Rail traffic on the leased property ceased in the 1980s, and portions of the rail line were paved. In 1995, the railroad company's successor quitclaimed its interests to respondent Board of Commissioners of Erie MetroParks, a park district created pursuant to R.C. 1545.01 et seq. The board acquired the property to build a recreational trail.

2. Relators' Acquisition of Canal Company Property

{¶ 7} In February 2000, Key Trust conveyed a portion of the canal company property to relators Richard and Carol Rinella. Key Trust conveyed the

2

remaining property owned by the canal company to Edwin and Lisa Coles and Buffalo Prairie, Ltd., a limited-liability company of which Edwin Coles serves as president. Sections of the canal company property were then conveyed to others, including relators Gerald O.E. Nickoli and Robin L.B. Nickoli; trustee Patricia A. Sipp (f.k.a. Charville), as to an undivided half interest, and successor trustees Patricia A. Sipp, Mark Charville, and David A. Charville, as to an undivided half interest ("Charville trusts"); Douglas Hildebrand; Dale A. Hohler and Ellen H. Hohler; Theresa R. Johnston; cotrustees John F. Landoll and Virginia A. Landoll; Michael P. Meyer and Cheryl Lyons; Donna J. Rasnick; Maria Sperling; Gary R. Steiner and Virginia M. Steiner; and Rita M. Beverick.

### 3. Huron River Greenway

{¶ 8} By the end of 1998, respondent Erie MetroParks had started construction of a recreational trail known as the Huron River Greenway through the corridor, which is a 66-foot-wide path. The trail was opened to the public in 2003. The former canal corridor runs through each relator's property; the recreational trail is thus located within relators' properties. None of relators' property, aside from a .9-acre piece of the Charville trusts' property within the Townsend tract, is within the Merry or Townsend tracts.

### B. *Litigation Involving Property*

{¶ 9} In 1999, the Erie MetroParks Board of Commissioners initiated a declaratory-judgment action in the Erie County Court of Common Pleas against Key Trust. In 2000, the board filed an amended complaint for declaratory judgment that added those property owners, including most of the relators in this case, who may have received Key Trust's interests in the former canal-company property. The common pleas court entered a judgment finding that the property leased by the railroad consisted solely of the Merry and Townsend properties but that the lease was void because it had been breached by a predecessor in interest to the board of park commissioners.

**{¶ 10}** On appeal, the court of appeals affirmed the judgment of the common pleas court insofar as it found that the railroad lease was limited to the land obtained by the canal company from Merry and Townsend. *Erie Metroparks Bd. of Commrs. v. Key Trust Co. of Ohio, N.A.* (2001), 145 Ohio App.3d 782, 787-788, 764 N.E.2d 509. The court of appeals held that the trial court had, however, erred by concluding that the board's predecessor in interest had breached the railroad lease. Id. at 790. The court of appeals reversed that portion of the trial court's judgment invalidating the lease and remanded the cause for further proceedings. Id. at 791.

**{¶ 11}** On remand, the common pleas court held that the lessee had not abandoned the leased property, that the lease is in full force and effect, that the board of park commissioners is the current lessee and the holder of the lessee's rights under the lease, that the board is entitled to the sole occupancy and use of the leased property, that the rights of the defendants – including most of the relators here – are subject to the board's rights under the lease, and that the lease permitted the board to improve and use the leased property as a parkway or recreational trail. The trial court further concluded that the extent of the leased property was limited to the Merry and Townsend tracts conveyed to the canal company.

**{¶ 12}** In an appeal from the common pleas court's judgment on remand, the defendants, including most of the relators here, asserted that the portion of the judgment describing the leased property differed from a prior description, which had restricted the leased property to the Merry and Townsend parcels. The court of appeals rejected this contention by holding that the judgment on remand did not contradict the finding in the previous judgment entries "that the leased property encompassed only land obtained from Townsend and Merry." *Erie Metroparks Bd. of Commrs. v. Key Trust Co. of Ohio*, Erie App. Nos. E-02-009

and E-02-011, 2002-Ohio-4827, ¶ 22. The court of appeals affirmed the trial court's judgment.

### 1. Federal Litigation

{¶ 13} In 2003, the Coleses, Buffalo Prairie, and certain other landowners filed a civil-rights action in federal district court under Sections 1983, 1985(2), and 1985(3), Title 42, U.S.Code, against the board and its director-secretary for violations of their rights under the Fifth and Fourteenth Amendments to the United States Constitution. *Coles v. Granville* (Jan. 24, 2005), N.D. Ohio No. 3:03 CV 7595, 2005 WL 139137. They alleged that in developing the recreational trail, the board asserted entitlement to property beyond that found to be covered by the railroad lease in the *Key Trust* cases. The federal district court dismissed the case and determined that, as a federal court, it was barred from reviewing the state court's findings. Id. at *4. On appeal, the United States Court of Appeals for the Sixth Circuit affirmed, holding that the plaintiffs' cause of action for unconstitutional takings was not ripe for federal review when they had not brought a state action in mandamus to compel appropriation proceedings. *Coles v. Granville* (C.A.6, 2006), 448 F.3d 853, 865.

### 2. First Mandamus Case

{¶ 14} Shortly after the Sixth Circuit's decision in *Coles*, the Coleses, Buffalo Prairie, and certain other property owners who are successors to the canal-company property – but not including the relators in the present mandamus case – filed an action in this court for a writ of mandamus to compel the board of park commissioners and its director-secretary to either (1) commence an appropriation proceeding to compensate them for the board's taking of their property or (2) relinquish the seized property and direct the park district not to file an eminent-domain action to appropriate their property.

{¶ 15} In November 2007, we granted a writ of mandamus to compel the board to commence an appropriation proceeding to compensate the property

owners for an involuntary taking of their property. *State ex rel. Coles v. Granville*, 116 Ohio St.3d 231, 2007-Ohio-6057, 877 N.E.2d 968, ¶ 59. We found that the property owners had "established that by employing their private property for public use as a recreational trail, the board of park commissioners has taken their property."

### 3. Second Mandamus Case

**{¶ 16}** In January 2009, relators filed this action for a writ of mandamus to compel respondents, Erie MetroParks and its board of commissioners, to "initiate, within sixty (60) days of the issuance of the Writ, appropriation proceedings" pursuant to R.C. Chapter 163. After the park district and its board filed an answer and motion for judgment on the pleadings, we granted an alternative writ. Respondents filed an amended answer raising a statute-of-limitations defense.

**{¶ 17}** The parties have now filed evidence and briefs. We granted relators the Hohlers' application to dismiss their claims.

**{¶ 18}** The parties have also filed motions for leave to supplement their evidence. For the parties' initial motions, because they are unopposed and neither side claims prejudice from their consideration by the court, we grant the motions. We also grant relators' July 30 motion for leave to supplement their evidence because we find that the proffered evidence is pertinent to their mandamus claim and relators could not have been submitted it at the time that their evidence was due.

**{¶ 19}** This case is now before us for our consideration of the merits.

## II. Legal Analysis

### A. Res Judicata

**{¶ 20}** We must first determine whether – as relators claim – *Coles* and the *Key Trust* litigation bar the park district and its board from raising these defenses and entitles relators to the requested extraordinary relief in mandamus.

6

{¶ 21} In Ohio, "[t]he doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, ¶ 6. "Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action," whereas issue preclusion, or collateral estoppel, "precludes the relitigation, in a second action, of an issue that had been actually and necessarily litigated and determined in a prior action that was based on a different cause of action." *Ft. Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.* (1998), 81 Ohio St.3d 392, 395, 692 N.E.2d 140; see *Holzemer v. Urbanski* (1999), 86 Ohio St.3d 129, 133, 712 N.E.2d 713.

{¶ 22} For res judicata to apply, "one of the requirements is that the parties to the subsequent action must be identical to or in privity with those in the former action." *Kirkhart v. Keiper*, 101 Ohio St.3d 377, 2004-Ohio-1496, 805 N.E.2d 1089, ¶ 8. None of the relators in the *Coles* case is a party here, so the relators in the case now before us may rely on res judicata only if they are in privity with the *Coles* relators.

{¶ 23} Relators are not in privity with the relators in *Coles*. They did not participate in *Coles* or have any control over that case. Cf. *State ex rel. Schachter v. Ohio Pub. Emps. Retirement Bd.*, 121 Ohio St.3d 526, 2009-Ohio-1704, 905 N.E.2d 1210, ¶ 36. Nor were Erie MetroParks and its board bound to apply the result in *Coles* to relators, who own different property from the property at issue in *Coles*. Id. at ¶ 37.

{¶ 24} Privity was not created simply because relators received their properties from the same transferors as the relators in *Coles* and owned property adjoining the property of the relators in *Coles*. See, e.g., *O'Nesti*, 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, ¶ 12, in which we held that the

"relationship between co-employees subject to the same employment-related contract, without more, does not establish privity."

{¶ 25} This result comports with our admonition that "the use of offensive claim preclusion is generally disfavored." *O'Nesti*, 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, ¶ 17. "Offensive claim preclusion involves a situation in which a plaintiff seeks to bar a defendant from raising any new defenses, while defensive claim preclusion includes any scenario in which a defendant seeks to completely bar relitigation of a claim already determined in a prior lawsuit." Id. at ¶ 14.

{¶ 26} Therefore, because relators are not in privity with the relators in *Coles*, our judgment in the prior mandamus case does not bar Erie MetroParks and its board of commissioners from raising new defenses or entitle relators to the writ based on res judicata.

{¶ 27} Nor does the *Key Trust* litigation prevent the park district and its board from raising new defenses, e.g., the statute of limitations and lack of standing, that were not actually decided in the context of those declaratory-judgment proceedings. "Unlike other judgments, * * * 'a declaratory judgment determines only what it actually decides and does not preclude other claims that might have been advanced.' " *State ex rel. Mora v. Wilkinson*, 105 Ohio St.3d 272, 2005-Ohio-1509, 824 N.E.2d 1000, ¶ 14, quoting *State ex rel. Shemo v. Mayfield Hts.* (2002), 95 Ohio St.3d 59, 69, 765 N.E.2d 345.

*B.  Statute of Limitations*

{¶ 28} Erie MetroParks and its board of commissioners contend that the statute of limitations bars this mandamus action. In their amended answer, respondents raised the statute of limitations as an affirmative defense to relators' mandamus claim.

{¶ 29} Under R.C. 2305.09(E),[1] an action for relief on the grounds of a physical or regulatory taking of real property must generally be brought within four years after the cause accrued. Although this provision was enacted after most of the property was acquired by relators, "[a] period of limitations already running may also be shortened by the legislature" as long as "a period sufficiently long to allow a reasonable time to begin suit" is allowed. See generally 1A Sackman, Nichols on Eminent Domain (3d Ed.2006) 4-74, Section 4.102[3] (recognizing this rule in takings cases); see also *Cook v. Matvejs* (1978), 56 Ohio St.2d 234, 237, 10 O.O.3d 384, 383 N.E.2d 601, and *Gregory v. Flowers* (1972), 32 Ohio St.2d 48, 54, 61 O.O.2d 295, 290 N.E.2d 181, applying this rule in tort and workers' compensation cases. Respondents claim that relators failed to institute this mandamus action within the applicable four-year period when the taking had occurred at the latest by 2003, the year that the recreational trail was first opened to the public.

{¶ 30} As previously noted, R.C. 2305.09(E) requires that an action "[f]or relief on the grounds of a physical or regulatory taking of real property" shall be brought "within four years after the cause of action thereof accrued." No matter which date is chosen as the date when this cause of action accrued, the four-year statute of limitations had run and was a bar to a lawsuit sounding in eminent domain. In 1995, Erie MetroParks entered into a written agreement to purchase the former railroad-corridor property. In November of that year, Erie MetroParks, under its rules and regulations, declared the property to be a "closed area" open only to park employees and certain other authorized persons and threatened all others with a fine of up to $500 for a violation of its rule. By the end of 1998,

---

1. Insofar as relators assert that R.C. 2305.09(E) is unconstitutional, their claim lacks merit. Notably, the primary case cited by relators for this proposition – *Maricopa Cty. Mun. Water Conservation Dist. No. 1 v. Warford* (1949), 69 Ariz. 1, 206 P.2d 1168, has not been interpreted to preclude a state legislature from establishing a statute of limitations for takings claims. See *Flood Control Dist. of Maricopa Cty. v. Gaines* (2002), 202 Ariz. 248, 43 P.3d 196, ¶ 9-18.

according to its executive director, Erie MetroParks "occupied, possessed, used and exercised exclusive dominion and control over the Real Estate." And in 2003, the Huron River Greenway was opened to the public. Relators did not file their takings claim until January 2009, more than four years after any one of these dates.

**{¶ 31}** Relators claim that based on the "continuous-violation doctrine," R.C. 2305.09(E) does not bar relators' mandamus action. In examining the doctrine of continuous violation to determine whether a statute of limitations barred a claim under the Clean Air Act, Section 7401 et seq., Title 42, U.S.Code, the United States Court of Appeals for the Sixth Circuit first observed that "'[c]ourts have been extremely reluctant to apply this doctrine outside the context of Title VII.'" *Natl. Parks Conservation Assn., Inc. v. Tennessee Valley Auth.* (C.A.6, 2007), 480 F.3d 410, 416, quoting *LRL Properties v. Portage Metro Hous. Auth.* (C.A.6, 1995), 55 F.3d 1097, 1105, fn. 3.

**{¶ 32}** And in refusing to apply the doctrine in the context of a takings claim, the Sixth Circuit has noted that it distinguished continuing violations from the continuing effects of prior violations: " '[T]he present effects of past [violations] * * * do not trigger a continuing violations exception.' " *Ohio Midland, Inc. v. Ohio Dept. of Transp.* (C.A.6, 2008), 286 Fed.Appx. 905, 912, quoting *Tenenbaum v. Caldera* (C.A.6, 2002), 45 Fed.Appx. 416, 419. The court explained further that " '[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation.' " *Broom v. Strickland* (C.A.6, 2009), 579 F.3d 553, 555, quoting *Ward v. Caulk* (C.A.9, 1981), 650 F.2d 1144, 1147.

**{¶ 33}** Even if we accept the idea that a continuous violation may toll the statute in certain takings cases, the evidence here establishes that the claimed interference with relators' property rights emanates from *one event* – Erie MetroParks' construction of the recreational trail – which was completed at the

latest by 2003, when the trail was officially opened to the public. Every event that has occurred after the trail was opened was merely a continuation of the effects of that solitary event rather than the occurrence of new discrete acts. That is, relators' property interests were not further materially damaged after 2003.

{¶ 34} A "cause of action against the government has 'first accrued' only when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." (Emphasis omitted.) *Hopland Band of Pomo Indians v. United States* (Fed.Cir.1988), 855 F.2d 1573, 1577; see also *United States v. Dickinson* (1947), 331 U.S. 745, 749, 67 S.Ct. 1382, 91 L.Ed. 1789 ("when the Government chooses not to condemn land but to bring about a taking by a continuing process of physical events, the owner is not required to resort either to piecemeal or to premature litigation to ascertain the just compensation for what is really 'taken' "). Here, the events that constituted the alleged taking of relators' properties were completed at the latest by 2003, when the recreational trail was opened to the public. Relators either were or should have been aware of this. The taking occurred in 2003, and any further actions by Erie MetroParks in asserting control over the recreational trail afterwards merely continued the effects of that taking.

{¶ 35} The relators' request, in effect, seeks a ruling that the recreational trail constitutes a continued taking until the respondents' decision to open the trail to the public is reversed. If we were to adopt this position, we would eviscerate the statute of limitations, which would be an untenable result.

{¶ 36} As the Sixth Circuit noted in rejecting a comparable takings claim, "If this court were to accept the plaintiffs' theory that a taking is continuous until it is reversed, then all takings would constitute 'continuing violations,' tolling the statute of limitations. There would effectively be no statute of limitations, and the plaintiffs' theory could easily be extended to many other violations outside the takings context. This is not the law." *Ohio Midland*, 286 Fed.Appx. at 913; see

also *Painesville Mini Storage, Inc. v. Painesville*, Lake App. No. 2008-L-092, 2009-Ohio-3656, ¶ 32 (rejecting application of continuing-violations doctrine to takings claim because "the extent of the damages stemming from the alleged taking, i.e., the decrease in the value of its real property interests, was complete as soon as the roadway on the tract was no longer accessible").

{¶ 37} Therefore, the continuing-violations doctrine does not toll the application of the statute of limitations here, and R.C. 2305.09(E) bars relators' mandamus claim because it was not brought within four years after the recreational trail was opened to the public in 2003.

### III. Conclusion

{¶ 38} Res judicata does not entitle relators to the requested relief or prevent the park district and its board of commissioners from raising defenses that they did not raise in the previous mandamus action involving different relators. Moreover, the statute of limitations in R.C. 2305.09(E), which is one of the defenses raised in this case, bars relators' takings claim. Therefore, we deny the writ.

{¶ 39} We need not address the parties' other claims, e.g., lack of standing, ownership of the property, judicial estoppel, and abandonment by the railway of its right-of-way, which are rendered moot as a result of our holding.

Writ denied.

MOYER, C.J., and O'CONNOR, SADLER, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., dissents.

LISA L. SADLER, J., of the Tenth Appellate District, sitting for O'DONNELL, J.

_____

**PFEIFER, J., dissenting.**

{¶ 40} I dissent from this court's decision to deny the requested writ of mandamus.

{¶ 41} Today, the majority opinion denies the writ of mandamus based on the expiration of the applicable statute of limitations. I dissent because there has been a continuous violation, which tolls the running of the statute of limitations.

{¶ 42} The United States Court of Appeals for the Sixth Circuit has recognized a continuous-violation doctrine that tolls the running of the statute of limitations. See *Hensley v. Columbus* (C.A.6, 2009), 557 F.3d 693, 697. The majority opinion correctly notes that "courts have been extremely reluctant to apply this doctrine outside the context of Title VII," *LRL Properties v. Portage Metro Hous. Auth.* (C.A.6, 1995), 55 F.3d 1097, 1105, fn. 3, but without acknowledging that "[n]o opinion has articulated a principled reason why the continuing-violation doctrine should be limited to claims for deprivations of civil rights and employment discrimination." *Natl. Parks Conservation Assn., Inc. v. Tennessee Valley Auth.* (C.A.6, 2007), 480 F.3d 410, 416-417. I would apply the continuing-violation doctrine in this case. See *Kuhnle Bros., Inc. v. Geauga Cty.* (C.A.6, 1997), 103 F.3d 516 (discussing continuing-violation doctrine in case involving takings claim and due-process claims for deprivations of liberty and property).

{¶ 43} A " 'continuous violation' exists if: (1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiffs accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided." *Hensley*, 557 F.3d at 697.

{¶ 44} The evidence establishes that wrongful conduct has continued beyond the 2003 date when the recreational trail was opened to the public. For example, in 2005, Erie MetroParks installed permanent wooden benches on relators the Charville trusts' and the Steiners' properties and constructed a car turnaround on the Charville trusts' property; since November 2007, the park district has mowed, driven vehicles over, removed debris from, and otherwise exercised dominion and control over the portions of the trail on relators'

properties; the park district installed a bulletin board and a sign on relator Meyer's property and signs on relators the Steiners' property; the park district has also applied herbicide on the trail to control weeds, which has harmed relator Hildebrand's organic produce farm; in 2008, the park district went through relators the Nickolis' property and removed trees that had fallen across part of the trail; also in 2008, the park district destroyed barricades erected by relator Johnston on her property; and in April 2009, the park district reopened the recreational trail on the Charville trusts' and Hildebrand's properties. It is beyond dispute that Erie MetroParks and its board of commissioners continue to exercise dominion and control over the portions of the trail on relators' private properties and continue to preclude relators from exercising control over those portions.

{¶ 45} Second, as the previous examples establish, injury to relators continued to accrue after the recreational trail was opened to the public.

{¶ 46} Third, if the park district and its board of commissioners ceased exercising control and stopped public use of the portion of the recreational trail on relators' property, further injury to relators could be avoided.

{¶ 47} The majority erroneously relies on *Ohio Midland, Inc. v. Ohio Dept. of Transp.* (C.A.6, 2008), 286 Fed.Appx. 905, and *Broom v. Strickland* (C.A.6, 2009), 579 F.3d 553, to hold that the continuing-violation doctrine is inapplicable here. In *Midland*, 286 Fed.Appx. at 912-913, the court emphasized that its refusal to compel the Ohio Department of Transportation to rebuild a bridge ramp was based on the fact that one alleged constitutional violation had occurred rather than "a series of repeated constitutional violations." In *Broom*, 579 F.3d at 555-556, the inmate challenged the state's adoption of the lethal-injection protocol in death-penalty cases rather than continual unlawful acts. In contrast to these cases, relators have established that the park district and its board of commissioners have engaged in a series of discrete acts that have damaged relators' property in new and different ways than the opening of the trail to the

public in 2003. Contrary to the various acts of wrongful conduct described above, the majority opinion concludes that "the claimed interference with relators' property rights emanate from *one event* — Erie MetroParks' construction of the recreational trail." (Emphasis sic.) That conclusion is not supported by the record.

{¶ 48} We have held that when a trespass is continuing rather than permanent, the expiration of the statute of limitations is tolled. *Sexton v. Mason*, 117 Ohio St.3d 275, 2008-Ohio-858, 883 N.E.2d 1013, ¶ 45, 54. A defendant's ongoing conduct or retention of control is dispositive. Id. at ¶ 45. Here, the park district continues to exercise ongoing control over relators' property by maintaining the recreational trail, which indicates that the statute of limitations should be tolled.

{¶ 49} Applying a continuing-violations rule to toll the running of the statute of limitations would not render R.C. 2305.09(E) meaningless, as Erie MetroParks argues, because the statute would still apply in certain situations. For example, when a taking is temporary or has been completed, the limitations period of R.C. 2305.09(E) would not be tolled even under the continuing-violations doctrine. See, e.g., *Hensley*, 557 F.3d at 697-698.

{¶ 50} I conclude that R.C. 2305.09(E) does not bar relators' mandamus action. This court has long acknowledged that property rights "are among the most revered in our law and traditions" and "must be trod upon lightly, no matter how great the weight of other forces." See *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 34 and 38, and cases cited therein. By ignoring this precedent here, the majority unfairly eviscerates these rights.

{¶ 51} Because relators have established that the board of park commissioners has taken their private property for public use as a recreational trial, they are entitled to a writ of mandamus to compel Erie MetroParks and its

board to commence appropriations proceedings to compensate them for the taking.  Because the majority does not so hold, I dissent.

———————————————

Vorys, Sater, Seymour and Pease, L.L.P., Bruce L. Ingram, Joseph R. Miller, and Thomas H. Fusonie, for relators.

Porter, Wright, Morris, & Arthur, L.L.P., and Thomas A. Young; and Tomino & Latchney, L.L.C., and John D. Latchney, for respondents.

———————————————