[Cite as *Monroe v. Forum Health*, 2014-Ohio-3974.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| CHARLES MONROE, et al., | : | **O P I N I O N** |
| Plaintiffs-Appellants, | : | |
| - vs - | : | **CASE NO. 2014-T-0015** |
| FORUM HEALTH dba TRUMBULL MEMORIAL HOSPITAL, et al., | : | |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2009 CV 448.

Judgment: Affirmed.

*Laurel A. Matthews,* Matthews & Assoc. Co., LPA, 5200 Valley Parkway, Brecksville, OH 44141, and *Richard C. Alkire,* Richard C. Alkire Co., LPA, 250 Spectrum Office Building, 6060 Rockside Woods Boulevard, Independence, OH 44131 (For Plaintiffs-Appellants).

*Marshall D. Buck,* Comstock, Springer, & Wilson, 100 Federal Plaza East, #926, Youngstown, OH 44503 (For Defendants-Appellees, Marshall D. Buck and Comstock Springer & Wilson Co., L.P.A.).

*Thomas J. Wilson,* Comstock, Springer, & Wilson, 100 Federal Plaza East, #926, Youngstown, OH 44503 (For Defendants-Appellees, Forum Health, d.b.a. Trumbull Memorial Hospital and Forum Health at Home).

DIANE V. GRENDELL, J.

{¶1} Plaintiffs-appellants, Charles and Joan Monroe, appeal from the judgments of the Trumbull County Court of Common Pleas, granting the defendants,

Forum Health, dba Trumbull Memorial Hospital, Marshall D. Buck, Comstock, Springer, & Wilson Co., L.P.A., Dawn Dominic, Forum Health at Home, and Celtic Healthcare's, Motion for Summary Judgment, dismissing the Monroes' claims, and denying the Monroes' Motion to Disqualify Comstock. The issues to be determined by this court are whether a claim for Spoliation of Evidence can be raised in a lawsuit separate from the one where such evidence was presented, whether an attorney's conflict under Prof.Cond.R. 3.7 is imputed to his law firm, and whether a claim for a violation of the Ohio Consumer Sales Practices Act related to medical billing must be raised in the related medical malpractice action. For the following reasons, we affirm the decision of the trial court.

{¶2} On February 18, 2009, the Monroes filed a Complaint against appellees, Forum Health, Forum Health at Home, Marshall D. Buck, Comstock, Springer, & Wilson Co., L.P.A., as well as defendants, Dawn Dominic, Celtic Healthcare of N.E. Ohio, and Snapshots, raising four counts. Under Counts One and Two, they asserted claims for Spoliation of Evidence, arguing that all of the defendants destroyed, altered, or falsified various medical records and bills related to Charles Monroe's medical treatment "for the express purpose of disrupting" a medical malpractice case previously filed and litigated by the Monroes in Trumbull County Court of Common Pleas Case No. 2007 CV 2107.[1] Under Count Three, the Monroes asserted Fraud against Forum Health, arguing that it falsely misrepresented and/or billed Charles Monroe for treatment and tests. In Count

---

1. That case, which related to purported medical malpractice resulting from the failure to properly treat heart problems that allegedly caused a subsequent stroke, was appealed to this court in *Monroe v. Youssef*, 11th Dist. Trumbull No. 2009-T-0012, 2012-Ohio-6122 ("*Monroe I*"). Among the pertinent arguments were alleged errors relating to the admission of the allegedly spoliated evidence and the court's failure to allow the Monroes to amend their complaint to add a spoliation claim. This court affirmed the trial court's decision, finding no error.

2

Four, the Monroes asserted that Forum Health violated R.C. 1345, the Ohio Consumer Sales Practices Act (CSPA), by committing unfair or deceptive acts as a supplier of medical services.

{¶3} On March 3, 2009, Forum Health, Buck, Comstock, Springer, & Wilson, Dominic, and Forum Health at Home, filed a Motion to Dismiss, pursuant to Civ.R. 12(B)(6). In the Motion, they argued, inter alia, that the Spoliation claims were not brought in a timely fashion and were barred by both immunity and res judicata. On March 16, 2009, Celtic Healthcare filed a similar Motion to Dismiss.

{¶4} On March 1, 2012, the trial court issued a Judgment Entry, granting the Motion to Dismiss.

{¶5} On March 21, 2012, the Monroes filed an appeal from that Judgment Entry to this court.[2]

{¶6} On appeal, this court, in *Monroe v. Forum Health*, 11th Dist. Trumbull No. 2012-T-0026, 2012-Ohio-6133, affirmed in part and reversed in part the decision of the lower court. This court affirmed the dismissal of the Fraud claim but reversed and remanded as to the dismissal of the remaining three counts. We held that dismissal of the claims on the grounds of res judicata was improper at the Civ.R. 12(B)(6) stage of the proceedings. *Id.* at ¶ 53 ("[t]o the extent that this court has found spoliation of evidence cannot be pursued in a separate lawsuit due to earlier discovery of the issue, such proceedings were at the summary judgment stage").

{¶7} On January 31, 2013, three separate Answers were filed by the defendants, each raising various defenses, including res judicata.

---

2. The matter was subsequently remanded to the trial court to clarify the status of the claims against Celtic Healthcare. The trial court issued a Judgment Entry on September 20, 2012, granting Celtic Healthcare's Motion to Dismiss.

**{¶8}** On June 27, 2013, the Monroes filed a Motion to Disqualify Marshall Buck and Comstock, Springer, & Wilson as counsel. They argued that, since counsel were also co-defendants in the matter, they should be prohibited from representing all defendants.

**{¶9}** The defendants filed a Reply on July 11, 2013, arguing that the Monroes had no standing to challenge Buck as counsel and that there was no basis for disqualification under the Ohio Rules of Professional Conduct.

**{¶10}** On August 20, 2013, the defendants filed a Motion to Admit Trial Transcript and Exhibits, requesting that the trial transcript from Case No. 2007 CV 2107 be considered in this case, which the Monroes opposed.

**{¶11}** On the same date, the defendants filed a Motion for Summary Judgment. They argued that the remaining claims were barred by res judicata and that the evidence, which included medical documents and a still photograph taken from a cardiac catheterization procedure video, was not altered.

**{¶12}** On August 23, 2013, the trial court filed a Judgment Entry granting the request to disqualify Buck from representing all defendants except himself and Comstock, "to avoid any confusion between Atty. Buck as an advocate and * * * as a witness/party to the litigation." Comstock was not disqualified and the court found that its representation of the defendants was not prohibited under Rule 1.7.

**{¶13}** On September 18, 2013, the Monroes dismissed their claims against Dominic and Celtic Healthcare.

**{¶14}** On September 19, 2013, the Monroes filed an Amended Brief in Opposition to Defendants' Motion for Summary Judgment. They argued that the

4

photograph was spoliated, since, inter alia, it was altered from its original form through cropping and changing of light and it misled the jury. They also argued that certain other pieces of evidence were altered in various ways, including having inconsistent markings from other copies. They asserted that they were improperly billed for services rendered on October 9 and 11, 2006, for a consultation and transesophageal echocardiography.

{¶15} On the same date, the Monroes filed a Motion for Summary Judgment on the Issue of Liability on their Spoliation claim. The appellees filed replies on October 15 and 21, 2013.

{¶16} According to testimony and facts presented through summary judgment, the Monroes argued that the appellees were responsible for presenting an image during the trial in 2007 CV 2107, which was taken from a video of a cardiac catheterization procedure. At the time of trial, the Monroes argued that this image should not be admitted and moved to amend their Complaint to include a Spoliation claim. This request was denied by the trial court and the picture was admitted.

{¶17} In the depositions, Attorney Buck, who had represented the appellees in the trial, asserted that he did not alter any images and that the Monroes' counsel was provided with the DVD containing the cardiac catheterization, from which the still image was taken, prior to trial. Buck explained that he took one image from the cardiac catheterization, provided to him by Dr. Yoon, to Snapshots, a photo developing company, prior to presenting it to the jury. He, as well as Herbert Weiss, who

5

developed the photo at Snapshots, testified that the photograph was not altered at the time it was printed.[3]

**{¶18}** In his affidavit, Buck explained that, at the time of trial, all medical records were properly provided to the Monroes.

**{¶19}** Dr. Pyongsoo Yoon testified that he reviewed the catheterization study film, and provided a copy to Buck for the photograph to be made. He was not involved in the developing of the photograph, but did note that he testified at the trial that the photograph came from the catheterization study located on the computer system at the hospital.

**{¶20}** Boris Bershadskiy, a technology witness for the Monroes, explained, in an affidavit, that the photo at issue included material alterations to the original data from the cardiac catheterization study, specifically, that the brightness and lighting levels of the photo were altered, which impacted the image, and that a portion of the image was cropped, "eliminating the view's original frame of reference."

**{¶21}** Steven Mengelkamp, a court reporter, testified in his affidavit that there were some inconsistencies in various documents presented by the defendants to Monroe, including missing pages in certain documents.

**{¶22}** The Monroes also attached various "reports," in the form of letters to counsel, to their Motion for Summary Judgment, in which doctors opined that Dr. Yoon's testimony at trial regarding a stenosis, or a narrowing of the heart valve, depicted in the photograph was incorrect.

---

3. There was some conflicting evidence, presented through the depositions and affidavits, as to whether the still image was already chosen when taken to Snapshots by Buck, or whether the image was chosen at the time it was printed.

{¶23} On January 31, 2014, the trial court filed a Judgment Entry, granting summary judgment in favor of the defendants and dismissing the Monroes' claims. Regarding the Spoliation claim, the court found that it was barred by res judicata, noting that the trial court and this court, on appeal, had found that the exhibit, the cardiac catheterization photo, was not spoliated. The lower court also found that the Spoliation claim was discovered during the trial and, thus, could not be brought in a separate lawsuit. The court held that, regardless of res judicata, there was no evidence that the alleged spoliation disrupted the Monroes' medical malpractice case.

{¶24} Regarding the CSPA claim, the court also found that this was barred by res judicata. The court found that the billing issues could have been and were raised in the trial. It noted that these billing issues were apparent from the documents received by the Monroes and should have been addressed at that time, not in a subsequent lawsuit.

{¶25} The Monroes timely appeal and raise the following assignments of error:

{¶26} "[1.] The trial court committed prejudicial error in granting defendants-appellees Marshall D. Buck, Esq. and Comstock Springer and Wilson Co., LPA's MSJ on plaintiffs-appellants' claim for spoliation of evidence on the basis of res judicata.

{¶27} "[2.] The trial court's denial of plaintiffs-appellants' motion for summary judgment on the issue of liability on their claim for spoliation of evidence against defendants-appellees Marshall D. Buck, Esq. and Comstock Springer and Wilson Co., LPA was an abuse of discretion.

7

{¶28} "[3.] The trial court's denial of plaintiffs-appellants' motion to disqualify the law firm of Comstock, Springer & Wilson Co, LPA as counsel for Forum Health d/b/a Trumbull Memorial Hospital was reversible error.

{¶29} "[4.] The trial court's grant of summary judgment in favor of defendant-appellee Forum Health, d/b/a Trumbull Memorial Hospital upon its finding that res judicata bars plaintiffs-appellant's claims under R.C. 1345.09 was prejudicial error."

{¶30} In their first assignment of error, the Monroes argue that the trial court improperly dismissed their Spoliation claims based on res judicata. They also argue that they provided sufficient evidence to sustain the summary judgment challenge, since they showed that the photograph alleged to have been taken from the cardiac catheterization study, and a subsequent disc containing that study, were altered from the original catheterization study video.

{¶31} Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor."

{¶32} A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without

8

deference to the trial court's decision." (Citation omitted.) *Peer v. Sayers*, 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶ 27.

{¶33} "The doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, ¶ 6. "'Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action,' whereas issue preclusion, or collateral estoppel, 'precludes the relitigation, in a second action, of an issue that had been actually and necessarily litigated and determined in a prior action that was based on a different cause of action.'" (Citation omitted.) *State ex rel. Nickoli v. Erie Metroparks*, 124 Ohio St.3d 449, 2010-Ohio-606, 923 N.E.2d 588, ¶ 21.

{¶34} While the Monroes' arguments are based on the res judicata questions surrounding whether prior consideration of the Spoliation claims in the initial trial and appeal bar filing a separate action against additional parties, another related basis was provided for the trial court's holding. The lower court found that, since the spoliation was discovered during the trial, it could not be raised in a separate claim. This alone provided the trial court with a valid ground to grant summary judgment in favor of the defendants. "Claims for spoliation of evidence may be brought after the primary action has been concluded *only when evidence of spoliation is not discovered until after the conclusion of the primary action.*" (Emphasis added.) *Davis v. Wal-Mart Stores, Inc.*, 93 Ohio St.3d 488, 756 N.E.2d 657 (2001), syllabus; *Ciganik v. Kaley*, 11th Dist. Portage No. 2004-P-0001, 2004-Ohio-6029, ¶ 30; *State ex rel. Hartman v. Tetrault*, 12th

9

Dist. Clermont No. CA2012-03-021, 2012-Ohio-4646, ¶ 26 (where appellant "became aware of the spoliation claim during the pendency of the First Litigation," the claim should have been raised at that time).

{¶35} Here, the fact that the photograph may have been spoliated was clearly evident to the Monroes, given that they raised the issue that the photograph was inconsistent with the catheterization study video during the trial, raised questions about the disc presented to the court to authenticate the photo, and also attempted to amend their Complaint to add the Spoliation claim at that time. The exact photograph that raised this concern is the one in dispute in the present matter.

{¶36} The Monroes fail to adequately address this issue on appeal and provide no valid justification for the conclusion that their Spoliation claim was not one that could be brought only in the initial lawsuit. They note the existence of affidavits procured from various sources, providing explanations as to why/how they believed the photograph was spoliated, including that the frame had been cropped and the lighting had been altered. This is not evidence that spoliation was discovered after the conclusion of the primary action, but merely support for the contention, already known by the Monroes in the prior action, that the evidence was altered.[4]

{¶37} Considering the Monroes' arguments to the trial court on summary judgment, they also asserted that they did not realize until after the trial, when separating the photograph from its backing, that it had been developed at Snapshots. However, this again provides no support for the contention that the spoliation was

4. Although the Monroes raised issues relating to the spoliation of certain documents during the proceedings in the lower court, their argumentation here focuses exclusively on the photograph.

10

discovered after the conclusion of the proceedings, since the fact that it was developed at Snapshots does not make it any more likely that the evidence was spoliated.[5]

{¶38} The Monroes argue that they could not have brought their claim for Spoliation against Comstock and Buck, since they were not parties in the original action and thus, are permitted to raise a separate action. There is no reason, however, that they could not have requested to amend their Complaint both to include the Spoliation claim and the proper parties. Pursuant to Civ.R. 15, a party may amend his pleadings with the leave of court "when justice so requires." This includes amending the pleadings to include additional parties when necessary. *See Christ v. Konski*, 181 Ohio App.3d 682, 2009-Ohio-1460, 910 N.E.2d 520, ¶ 17-18 (6th Dist.).

{¶39} The Monroes also argue that the trial court improperly considered prior trial court transcripts and this court's appellate decision in *Monroe I*. Both parties concede that the court did not expressly rule on the Motion to Admit Trial Transcript and Exhibits, and thus, it is deemed denied. *Orrenmaa v. CTI Audio, Inc.*, 11th Dist. Ashtabula No. 2007-A-0088, 2008-Ohio-4299, ¶ 63.

{¶40} Regardless, to reach the conclusion that the Spoliation claim could only have been pursued and argued in the prior case and appeal, it is not necessary to consider the prior trial court transcripts and testimony. During discovery in the present case, Dr. Yoon was questioned in his deposition regarding the facts surrounding the presentation of the allegedly spoliated evidence. The questioning showed that, at trial, he was asked to explain how the picture was produced, whether it was produced from the disc of the cardiac catheterization study, and to show how the picture corresponded with the video. Attorney Buck also testified that the Monroes challenged the

---

5. The Monroes dismissed their claim against Snapshots in this litigation.

11

photograph's admission and authenticity at the trial and that the judge compared the catheterization study on the disc presented at trial with the picture. The Monroes conceded multiple times in their motions regarding summary judgment that they requested to amend their claim during the trial proceedings to include a spoliation claim related to this evidence. Thus, there is a sufficient basis to conclude that the present claim is barred under *Davis.*

**{¶41}** While the lower court, in the initial trial, determined that the Complaint should not be amended to add the Spoliation claim, the Monroes were given the opportunity to dispute this upon appeal, and did so. *See Monroe I*, 2012-Ohio-6122. Even if the court originally did not allow the Complaint in the first matter to be altered, the prior appeal was the appropriate time to dispute this issue.

**{¶42}** The first assignment of error is without merit.

**{¶43}** In their second assignment of error, the Monroes argue that the evidence they presented in support of their Spoliation claim was sufficient to sustain the claim and that there was no evidence to the contrary provided by the defendants.

**{¶44}** Since we find that, regardless of the evidence presented on the elements of the Spoliation claim, it was not properly raised in this proceeding, this assignment of error is moot.

**{¶45}** The second assignment of error is without merit.

**{¶46}** In their third assignment of error, the Monroes argue that the trial court erred in determining that Comstock could continue to represent the defendants, since Buck's disqualification should be imputed to Comstock, the firm where he is employed, and the court improperly applied and/or failed to consider Prof.Cond.R. 1.7 and 3.7.

**{¶47}** A trial court's decision on a motion to disqualify counsel is reviewed for an abuse of discretion. *155 N. High, Ltd. v. Cincinnati Ins. Co.*, 72 Ohio St.3d 423, 650 N.E.2d 869 (1995), syllabus. An abuse of discretion involves the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" (Citations omitted.) *Douglass v. Priddy*, 11th Dist. Geauga No. 2013-G-3172, 2014-Ohio-2881, ¶ 16. "[I]t is well accepted that disqualification of an attorney is a drastic measure that should not be imposed unless necessary." *Id.*, citing *Kala v. Aluminum Smelting & Refining Co., Inc.*, 81 Ohio St.3d 1, 6, 688 N.E.2d 258 (1998).

**{¶48}** The Monroes specifically argue that, since Buck was disqualified from representing all defendants except himself and Comstock under Prof.Cond.R. 3.7, the entire Comstock firm should also be disqualified. Pursuant to Prof.Cond.R. 3.7(a), "[a] lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness" unless specific circumstances, which do not appear to be relevant here, apply. The rule also states that "[a] lawyer may act as an advocate in a trial in which another lawyer in the lawyer's *firm* is likely to be called as a witness unless precluded from doing so by Rule 1.7 or 1.9." Prof.Cond.R. 3.7(b) and comment 7 ("a lawyer is not disqualified from serving as an advocate because a lawyer with whom the lawyer is associated in a firm is precluded from doing so by division (a)"). Thus, while Buck was disqualified due to the fact that he was likely to be called as a witness, and had actually given a deposition, this conflict is not imputed to the other Comstock attorneys.

**{¶49}** The remaining issue is whether Buck was or should have been disqualified under Rule 1.7, such that this could be imputed to Comstock. While the

13

Monroes argue that the trial court did not consider this issue, the fact that it is not specifically discussed does not mean that is the case. Regardless, we cannot find that any potential conflict under Rule 1.7 should be imputed to Comstock.

{¶50} Pursuant to Rule 1.7(a), a lawyer may not represent a client if it "creates a conflict of interest" and if "the representation of that client will be directly adverse to another current client" or "there is a *substantial* risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by the lawyer's own personal interests."

{¶51} The Monroes do not specifically argue here which ground would provide a basis for Buck's disqualification. The testimony indicates that all defendants maintained the evidence was not spoliated, making it questionable that the defendants' interests would be conflicting. If the conflict is considered personal, i.e., that Buck has an interest in protecting himself in the allegations that the evidence was spoliated, lawyers associated in a firm are not prohibited from representing a client when the conflict "does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the *firm*." Prof.Cond.R. 1.10(a).

{¶52} Further, in the filings on the Motion to Disqualify, the defendants asserted that waivers of conflict were executed. Under Rule 1.7(c), when waivers are filed, the representation is prohibited only if prevented by law or if "the representation would involve the assertion of a claim by one client against another client represented by the lawyer in the same proceeding." Since this is not the case in the present matter, there is no conflict to impute to Comstock.

14

{¶53} The third assignment of error is without merit.

{¶54} In their fourth assignment of error, the Monroes argue that their CSPA claim was improperly barred by res judicata, noting that the claim was not raised in their prior case against Forum Health, Case No. 2007 CV 2107, which related to liability for malpractice committed by Dr. Mona Youssef, Dr. Andrei Gursky, and Dr. Yoon. They argue that, since the CSPA claim related to improper billing was not already argued, it is not barred by res judicata. The Monroes also assert that, since this claim relates to facts separate from those needed to prove the medical malpractice claims, it did not have to be raised in the prior case.

{¶55} Forum Health argues that, since the CSPA claim relates to the care and treatment given at Forum Health, which was the subject of the initial case, the failure to raise this claim at that time resulted in it being barred by res judicata.

{¶56} We first emphasize that, although the Monroes argue that they did not bring the CSPA claim or any claims related to billing in their initial lawsuit, this does not prohibit a finding that their claim is barred by res judicata. "Res judicata bars the litigation of all claims that either were or *might have been* litigated in a first lawsuit." (Emphasis added.) *Hughes v. Calabrese*, 95 Ohio St.3d 334, 2002-Ohio-2217, 767 N.E.2d 725, ¶ 12; *Esposito v. Caputo*, 11th Dist. Lake No. 2002-L-099, 2003-Ohio-1590, ¶ 30 ("[r]es judicata 'applies to extinguish a claim by the plaintiff against the defendant even though plaintiff is prepared in the second action (1) to present evidence or theories of the case not presented in the first action, or (2) to seek remedies or forms of relief not demanded in the first action'") (emphasis deleted) (citation omitted). "Res judicata promotes the principle of finality of judgments by requiring plaintiffs to present every

15

possible ground for relief in the first action." *Kirkhart v. Keiper*, 101 Ohio St.3d 377, 2004-Ohio-1496, 805 N.E.2d 1089, ¶ 5.

**{¶57}** "[A] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382, 653 N.E.2d 226 (1995). A transaction has been defined as a "common nucleus of operative facts." (Citation omitted.) *Id.*

**{¶58}** In the present matter, the Monroes' initial lawsuit, which included Forum Health/Trumbull Memorial Hospital as a party, related to alleged malpractice committed during Charles Monroe's period of hospitalization in the first two weeks of October, 2006, for the diagnosis and treatment of his heart condition. The billing claim raised and outlined specifically in the Monroes' Motion for Summary Judgment occurred on October 9 and 11, 2006, and relates to the treatment and diagnosis that were the subject of the alleged malpractice. This claim arose out of the same nucleus of operative facts and the same transaction. It could have been raised with the medical malpractice claim, given that the bills would have been provided to the Monroes prior to the time the claim was instituted. Since this claim should have been raised previously, the trial court properly concluded that it is barred by res judicata.

**{¶59}** While the Monroes cite *Miami Valley Hosp. v. Purvis*, 2nd Dist. Montgomery No. 21740, 2007-Ohio-4721, in support of the proposition that the billing and treatment in this case should be considered separate transactions, in *Miami Valley*, the claims raised by the plaintiff arose from separate visits to the hospital. Such is not the case here. Furthermore, the assertion that the facts to be proven in the malpractice

16

case are different than those in the billing matter must be questioned, given that at least some testimony regarding the treatment would likely be necessary to resolve whether the billing for these services was proper.

{¶60} Finally, the Monroes claim that the trial court's conclusion that "issues" related to the billing matter were raised in the prior matter was improper, since these billing issues are unrelated to those raised in this case. Regardless of the foregoing, the trial court properly concluded that the CSPA claim should have been raised in the prior trial, as outlined above.

{¶61} The fourth assignment of error is without merit.

{¶62} For the foregoing reasons, the judgments of the Trumbull County Court of Common Pleas, dismissing the Monroes' claims, granting the appellees' Motion for Summary Judgment, and denying the motion to disqualify Comstock, are affirmed. Costs to be taxed against the appellants.


TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

17