[Cite as *Rockford Homes, Inc. v. Canal Winchester City Council*, 2014-Ohio-3609.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Rockford Homes, Inc., | : | |
| Appellant-Appellee, | : | |
| | : | No. 14AP-89 |
| v. | : | (M.C. No. 2013 EVA-60081) |
| City of Canal Winchester Council et al., | : | (REGULAR CALENDAR) |
| Appellees-Appellants. | : | |

D E C I S I O N

Rendered on August 21, 2014

*Kegler, Brown, Hill & Ritter LPA, Catherine A. Cunningham* and *Richard C. Brahm,* for appellee.

*Frost Brown Todd LLC, Jennifer B. Croghan* and *Eugene L. Hollins,* for appellants.

APPEAL from the Franklin County Municipal Court,
Environmental Division

CONNOR, J.

{¶ 1} Appellee-appellant, the City of Canal Winchester, appeals from a judgment of the Franklin County Municipal Court, Environmental Division, reversing an order from the Council for the City of Canal Winchester ("Council") which denied an application for a development plan submitted by appellant-appellee, Rockford Homes, Inc. Because the trial court failed to apply the correct standard of review, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} This is the second time that these parties have been before this court regarding a development plan for certain property located in Canal Winchester. Rockford owns the property and wishes to construct apartments on the property. The history of the

development of the property was detailed by this court in *Rockford Homes, Inc. v. Canal Winchester*, 10th Dist. No. 09AP-827, 2010-Ohio-873 ("*Rockford* I") as follows:

> This action arises out of attempts to develop a planned district within the Village.[1] On August 28, 1990, the Council of the Village of Canal Winchester ("Council") enacted Ordinance No. 59-90, changing the zoning of certain, described property from Residential (R-2) to Planned Unit Development ("PUD"), subject to 32 staff-recommended conditions, and changing the Village zoning map accordingly. The rezoned property was directly associated with a development known as the Villages at Westchester, which was to include single family residential, multi-family residential, and commercial uses. The 9.112 acres that are the subject of this appeal are located within the property rezoned by Ordinance No. 59-90. It is undisputed that the staff-recommended conditions incorporated into Ordinance No. 59-90, which refer to an existing preliminary development plan for the Villages at Westchester, established the development standards text for the PUD.
>
> On April 2, 2001, Council enacted Ordinance No. 17-01 in response to a request for modifications to the preliminary development plan associated with the Villages at Westchester. Ordinance No. 17-01 changed an 11.06-acre parcel within the PUD from multi-family residential use to open space and park use and changed an 11-acre portion of a larger parcel within the PUD from single-family residential use to multifamily residential use. The ordinance imposed five supplemental conditions, but stated that "all other provisions of Ordinance No. 59-90 and [its] accompanying preliminary development plan and development text shall remain in full force and effect." The property at issue here is located within the parcel reclassified for multi-family residential use by Ordinance No. 17-01.
>
> On August 20, 2001, the Village amended Chapter 1173 of the Canal Winchester Zoning Code (the "Code"), which governs planned districts, including PUDs. Chapter 1173 contains specific requirements for submission and approval of a preliminary plan, development standards text, and development plan as part of the process for rezoning and developing property as a PUD.

---

[1] Between our decision in *Rockford I* and the current appeal, Canal Winchester became a city.

In February 2003, pursuant to the development standards text set forth in Ordinance Nos. 59-90 and 17-01, the Village Planning and Zoning Commission ("P & Z") approved Rockford's Application for Site Plan for a 112-unit multi-family apartment development, known as Canal Crossing, and for a 60-unit multi-family condominium development, known as Eagle Ridge, within the Villages at Westchester. Rockford constructed the Eagle Ridge condominiums, commencing in 2003, but it did not construct the Canal Crossing apartments.

In 2005, Rockford requested approval to amend its plans for Canal Crossing from a 112-unit apartment development to a 48-unit condominium development. P & Z approved Rockford's request on December 12, 2005. Again, Rockford did not build the Canal Crossing project, and its 2005 development plan lapsed pursuant to Canal Winchester Codified Ordinance 1173.06(c), which states that if construction site improvements are not commenced within two years after P & Z approval, a new development plan must be approved before development may begin.

In October 2008, Rockford submitted an Application for Site Development Plan (the "2008 application"), again requesting approval to develop Canal Crossing as a 112-unit apartment development, as originally approved in February 2003. At a November 10, 2008 meeting, P & Z considered the 2008 application, which is described in the meeting minutes as a request to amend the development plan previously approved on December 12, 2005. Despite a staff recommendation that the 2008 application be approved, P & Z unanimously denied Rockford's application. In a letter dated November 12, 2008, P & Z notified Rockford of the denial and of its right to appeal to Council.

Rockford appealed P & Z's denial of the 2008 application to Council, which held a public hearing on the appeal. Before opening the hearing for public comment, Council President Rick Deeds established that "this is not a re-zoning issue." Council then heard arguments from residents who opposed Rockford's 2008 application, primarily because they preferred the development of condominiums over the development of apartments on the property. After the public comments, Allan Neimayer, the P & Z Administrator, reiterated that the staff recommendation was for approval of the 2008 application because the accompanying development plan "met the code."

On January 5, 2009, Council issued Findings of Fact and Conclusions of Law, denying Rockford's 2008 application. Council described Rockford's 2005 and 2008 applications regarding the Canal Crossing development as requests to amend the preliminary plan and development text for the Villages at Westchester and rejected Rockford's argument that approval (or disapproval) of the 2008 application involved an administrative, rather than a legislative, action. Council treated the 2008 application as "an amalgamation of a new Preliminary Plan, Development Plan, and Development Text," requiring Council approval, because it found that Rockford "no longer had a Preliminary Plan and Development Text incorporated into the zoning text for Canal Crossing." Alternatively, Council found that the 2008 application was a "request to amend the previously approved PUD Plan and Development Text." Under both theories, Council stated that it was acting legislatively and denied the 2008 application.

Rockford appealed to the Franklin County Municipal Court, Environmental Division, pursuant to R.C. Chapter 2506. Rockford argued that Council erred by holding that the 2008 application sought legislative action rather than administrative action and also argued that Council's denial of the 2008 application was illegal, arbitrary, capricious, unreasonable, and unsupported by a preponderance of the substantial, reliable, and probative evidence. In response, the Village argued that the court lacked subject-matter jurisdiction because Council's denial of the 2008 application was a legislative action, not subject to appeal under R.C. Chapter 2506. The Village alternatively argued that Council's decision was supported by a preponderance of substantial, reliable, and probative evidence and should be affirmed.

The municipal court rejected the Village's jurisdictional argument, determining that Council's denial of the 2008 application was an administrative act, appealable under R.C. Chapter 2506. The court went on to conclude that Council's denial was capricious, arbitrary, and unsupported by a preponderance of the evidence. Accordingly, the court reversed Council's decision and remanded the matter for further proceedings.

*Id.* at ¶ 2-11

{¶ 3} In *Rockford* I, we determined that the trial court had jurisdiction to hear the appeal, as the denial of the 2008 application by Council was an administrative act. We further determined that there was no evidence to support the Council's denial of the 2008 application, noting that "the only possible evidence supporting a denial of Rockford's 2008 application stemmed from the testimony and statements of citizens at hearings before P & Z and Council." *Id.* at ¶ 34. We noted that the public comments were irrelevant, as "the sole question before P & Z and Council was whether Rockford's plan complied with [the] requirements," of Chapter 1173 of the Codified Ordinances of Canal Winchester ("Ordinances"), the preliminary plan, and the development standards text. *Id.* We affirmed the trial court's order reversing Council's decision and remanding the matter for further proceedings.

{¶ 4} Upon remand, the Planning & Zoning Commission of Canal Winchester ("P & Z") administratively approved Rockford's 2008 application on June 1, 2010. Canal Winchester's P & Z administrator, Andrew Dutton, informed Rockford of the approval, and informed Rockford that pursuant to Ordinance 1173.06(c), construction had to begin on the site within two years of the approval or the approval would lapse. Rockford did not begin construction on the project by June 1, 2012, and the approved 2008 application expired.

{¶ 5} On August 3, 2012, Rockford submitted a final development plan application ("2012 application") to construct a 112-unit apartment complex on the same piece of property at issue in *Rockford* I. Canal Winchester received the 2012 application on August 7, 2012.

{¶ 6} On August 15, 2012, Dutton sent Rockford a letter setting forth conflicts between the 2012 application and the applicable Ordinances. On November 19, 2012, Rockford submitted amended exhibits to its 2012 application. P & Z held a public hearing on the 2012 application on December 10, 2012. At the hearing, Rockford's attorney stated that the 2012 application was "similar to the previously approved [2008] application which had expired, except for for [sic] the reduction of 16-unit buildings to 12-unit buildings." (Administrative Record, 14, hereinafter "Admin.R.")

{¶ 7} On January 14, 2013, P & Z denied the 2012 application. Rockford appealed the denial to Council, and Council held a public hearing on the matter on February 18,

2013. At the February public hearing, counsel for Canal Winchester asked "if Rockford acknowledge[d] that [a portion of] Cormorant [Drive was] not a dedicated public road." (Admin.R. 6.) Cormorant Drive borders the proposed development, and would provide vehicular access to the apartment complex. Bob Yoakum, the president of Rockford, stated that Rockford was informed of the issue of Cormorant Drive being a private roadway a couple of weeks prior to the February public hearing. Yoakum stated that he was surprised to learn that a portion of Cormorant Drive was not a public road, as "a deed was presented to the City in 2005," although he acknowledged that the deed "was never recorded." (Admin.R. 6.) Yoakum noted that Rockford had installed Cormorant Drive "for the City with the intent for it to be a city road." (Admin. R. 6.)

{¶ 8}   On March 18, 2013, Canal Winchester issued a decision denying Rockford's 2012 application. Council noted that Ordinances 1141.05(e) and 1141.06(f) required every site plan to contain the location, width, size and intended purpose of all easements and rights-of-way, and to state whether those easements or rights-of-way are to be publicly or privately maintained. Council observed that Canal Winchester had accepted the first 525 +/- lineal feet of Cormorant Drive in 1998 through Ordinance 103-98, but further noted that the remaining 425 +/- lineal feet of Cormorant Drive were never publically dedicated or accepted by Canal Winchester. Accordingly, Council found that the latter portion of Cormorant Drive was not a public road and determined that "[t]he final development plan submitted by Rockford shows the entire existing portion of Cormorant Drive as public right-of-way in direct contradiction to the clear and unambiguous requirements of R.C. § 723.03 and Sections 1141.05(e) and 1141.06(f) of the Codified Ordinances." (Admin.R. 2, Conclusions of Law at 5, ¶ 6.) Council found Rockford's depiction of Cormorant Drive as a public right-of-way to be a material misrepresentation, and Council denied the 2012 application "based on the misrepresentation * * * showing privately owned Cormorant Drive as public roadway." (Admin.R., 2, Conclusions of law at 10, ¶ 8.)

{¶ 9}   Council then identified alternative reasons to support the denial of the 2012 application. Council noted that, as the development standards text in the preliminary development plan did not set forth standards for the Stream Corridor Protection Zone ("SCPZ") contained in Ordinance 1175.05, applied to the 2012 application. Council noted that a private drive was not a permitted use under the SCPZ, and noted that the 2012

application provided for a private drive to run over the O.P. Chaney Ditch, in violation of Ordinance 1175.05(f). Council further noted that the preliminary development plan for the property incorporated standards from the 1990 Codified Ordinances of Canal Winchester ("1990 Ordinances"). Council noted that the 2012 application provided for five detached garages on the property in violation of 1990 Ordinance 80.65.03(b), which limited the amount of accessory structures on residential lots to two. Council further noted that the 2012 application depicted a sign at the development entrance, and that the 1990 Ordinance 80.59.06 prohibited the sign.

{¶ 10} On April 10, 2013, Rockford appealed Council's order denying the 2012 application to the Environmental Division of the Franklin County Municipal Court. Rockford filed a brief with the trial court on August 30, 2013, noting that the 2012 application was "basically the same as the plan that was considered by this Court and the court of appeals" in *Rockford* I. (Rockford's trial court brief, 4.) Rockford asserted that the 2012 application did not indicate "[t]he status of Cormorant Drive as a dedicated public street or private street," and further noted that Canal Winchester had "not cited to any requirement that Cormorant Drive be a public street in order for Rockford to develop and use its property for apartments." (Rockford's trial court brief, 8, 20.) Rockford also noted that the ditch crossing, neighborhood sign, and the five detached garages had been on the 2008 application, which P & Z had administratively approved. Rockford noted that the property at issue was zoned multi-family residential, and asserted that the 1990 Ordinances cited by Canal Winchester applied to residential districts, and not to multi-family residential districts. Rockford also asserted that the SCPZ, contained in Ordinance 1175, was inapplicable to the 2012 application, which only had to comply with Ordinance 1173, the preliminary plan, and the development text.

{¶ 11} Canal Winchester filed its trial court brief on October 7, 2013. Canal Winchester asserted that the "development plan submitted by Rockford Homes shows Cormorant Drive as a public roadway." (Canal Winchester's trial court brief, 6.) Canal Winchester asserted that engineering construction plans to be reviewed by the technical review group had to comply with Ordinance 1141.06, which required every engineering construction plan to state whether the easements and rights-of-way depicted thereon were "to be publicly or privately maintained." Ordinance 1141.06(f). Canal Winchester

asserted that, due to the misrepresentation of Cormorant Drive as a public right-of-way, the 2012 application did not meet the requirements of R.C. 723.03 or Ordinances 1173.05(b)(3), 1173.04(a)(3)(G), 1141.05(e), and 1141.06(f). Canal Winchester also asserted that "when there is a residential component to a mixed use PUD district, the residential component obviously would be a 'residential district.' " (Canal Winchester's trial court brief, 11.) Rockford filed its reply brief on November 8, 2013.

{¶ 12} On January 8, 2014, the trial court issued a decision and entry reversing Council's order. The court found Rockford's 2012 "plan to be essentially the same" as the 2008 application which was "approved by this Court and the Court of Appeals." (Decision and Entry, 1.) The court stated that "an examination of the whole record [did] not provide a preponderance of the evidence to support the application denial," and found that Council's decision was "capricious, arbitrary, and unsupported by a preponderance of the evidence." (Decision and Entry, 1.)  The court did not mention or address the issues regarding Cormorant Drive, the SCPZ, the detached garages, or the neighborhood sign.

## II. ASSIGNMENTS OF ERROR

{¶ 13} Canal Winchester appeals, assigning the following errors:

> 1. The Trial Court abused its discretion when it misapplied the law by not addressing Rockford Homes' failure to comply with Chapter 1173 requirements for its development plan by materially misrepresenting a public right of way that does not exist.
>
> 2. The Trial Court abused its discretion when it misapplied the law by not addressing whether the after adopted ordinances passed to comply with federal and state mandates apply in a planned district when such standards are not in the planned district text or code.

## III.  FIRST ASSIGNMENT OF ERROR – TRIAL COURT FAILED TO APPLY CORRECT STANDARD OF REVIEW

{¶ 14} Canal Winchester's first assignment of error asserts that the trial court abused its discretion when it applied the incorrect standard of review. Specifically, Canal Winchester asserts that by reversing Council's decision because the 2012 application

was "essentially the same" as the 2008 application, the trial court failed to determine whether Council's denial of the 2012 application was supported by a preponderance of reliable, substantial and probative evidence. (Decision and Entry, 1.) We agree. Because the trial court failed to utilize the correct standard of review, we must reverse the trial court's order.

{¶ 15} Rockford appealed Council's decision to the environmental division of the municipal court pursuant to R.C. 2506.01. R.C. 1901.183(I) grants jurisdiction to the environmental division of a municipal court to hear appeals from "any final order of any * * * commission * * * that relates to a local building, * * * zoning * * * ordinance, or regulation, in the same manner and to the same extent as in similar appeals in the court of common pleas." R.C. 2506.01(A) states that "every final order * * * or decision of any * * * commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located."

{¶ 16} R.C. 2506.04 provides the standard of review for appeals taken pursuant to R.C. 2506.01. It provides as follows:

> If an appeal is taken in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code, the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code.

{¶ 17} The Supreme Court of Ohio has explained that, in an R.C. Chapter 2506 administrative appeal, the trial court must consider "the 'whole record,' including any new or additional evidence admitted under R.C. 2506.03, and determine[] whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or

unsupported by the preponderance of substantial, reliable, and probative evidence." *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147 (2000). While the trial court may not "blatantly substitute its judgment for that of the agency, especially in areas of administrative expertise," the trial court is charged with "weigh[ing] the evidence in the record * * * to determine whether there exists a preponderance of reliable, probative and substantial evidence to support the agency decision." *Dudukovich v. Lorain Metro. Housing Auth.*, 58 Ohio St.2d 202, 207 (1979).

{¶ 18} The standard of review to be applied by the court of appeals is more limited in scope. *Henley* at 147. R.C. 2506.04 " 'grants a more limited power to the court of appeals to review the judgment of the common pleas court only on "questions of law," which does not include the same extensive power to weigh "the preponderance of substantial, reliable and probative evidence," as is granted to the common pleas court.' " *Id.*, quoting *Kisil v. Sandusky*, 12 Ohio St. 3d 30, 34 (1984) , fn. 4. Within the ambit of " 'questions of law' " for appellate court review in administrative appeals under R.C. 2506.04 would be an abuse of discretion by the trial court. *Id.* at 148, quoting *Kisil* at fn. 4. Thus, while " '[i]t is incumbent on the trial court to examine the evidence,' " such is not the charge of the court of appeals. *Id.*, quoting *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261 (1988). An appellate court may not substitute its judgment for that of the administrative agency or the trial court absent the approved criteria for doing so. *Id.*

{¶ 19} Although the trial court stated the correct standard of review in its decision, the trial court failed to utilize the correct standard of review. Council denied the 2012 application because it found that Rockford had misrepresented the status of Cormorant Drive as being a public right-of-way. In the alternative, Council also stated that the 2012 application violated the SCPZ and two of the 1990 Ordinances. Rockford addressed all of these issues in its trial court brief, and specifically asserted that it had never designated Cormorant Drive as either a private or public right-of-way on the 2012 application. The trial court failed to review the record and determine whether a preponderance of substantial, reliable, and probative evidence supported Council's determination that Rockford had misrepresented the status of Cormorant Drive, or whether a preponderance of substantial, reliable, and probative evidence supported the

alleged violations of the SCPZ and the 1990 Ordinances. Instead, the trial court reversed Council's decision upon finding that the 2012 application was essentially the same as the 2008 application.

{¶ 20} Rockford asserts that the trial court's order was not in error, because the doctrine of res judicata obligated Canal Winchester to approve the 2012 application. We disagree. In Ohio, the doctrine of res judicata encompasses both issue preclusion, also known as collateral estoppel, and claim preclusion. *State ex rel. Nickoli v. Erie MetroParks,* 124 Ohio St.3d 449, 2010-Ohio-606, ¶ 21. " 'Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action.' " *Nickoli* at ¶ 21, quoting *Ft. Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.,* 81 Ohio St.3d 392, 395 (1998). Under claim preclusion, a previous judgment is conclusive as to all claims that were or might have been litigated in the first action. *State ex rel. Schachter v. Ohio Pub. Emps. Retirement Bd.,* 121 Ohio St.3d 526, 2009-Ohio-1704, ¶ 27. The doctrine of issue preclusion provides that " 'a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different.' " *State ex rel. Davis v. Pub. Emps. Retirement Bd.,* 120 Ohio St.3d 386, 2008-Ohio-6254, ¶ 27, quoting *Ft. Frye Teachers Assn.* at 395. Essentially, issue preclusion prevents the re-litigation of facts and issues that the parties or their privies fully litigated in a previous case. *Glidden Co. v. Lumbermans Mut. Cas. Co.,* 112 Ohio St.3d 470, 2006-Ohio-6553, ¶ 44.

{¶ 21} Res judicata may apply to administrative proceedings which are of a judicial nature, where the parties have had an ample opportunity to litigate the issues involved in the proceedings. *Cleveland v. Assad,* 10th Dist. No. 07AP-152, 2007-Ohio-4672, ¶ 9. *Compare Lamar Outdoor Advertising v. City of Dayton Bd. of Zoning Appeals,* 12th Dist. No. 18902, 2002-Ohio-3159, ¶ 18 (noting that res judicata could not apply to a notice from a zoning inspector, as the notice was "a purely administrative determination, made by an administrative officer *ex parte*"); *Set Products, Inc. v. Bainbridge Twp. Bd. of Zoning Appeals,* 31 Ohio St.3d 260 (1987), syllabus (noting that "[r]es judicata will not

bar the grant of an application for a [zoning] variance, after denial of a prior application covering the same property, upon a showing of changed of circumstances").

{¶ 22} Rockford asserts that this court "found that the 2008 Plan met the requirements of the [Ordinances] that applied and remanded it for approval" in *Rockford I*. (Appellee's brief, 32.) Rockford thus argues that because the "2012 Plan now before this Court is identical to the 2008 Plan," Canal Winchester "was required to approve the 2012 Plan." (Appellee's brief, 32-33.) However, this court never found that the 2008 plan met all of the applicable requirements of the Ordinances. Rather, we found no evidence to support Council's denial of the 2008 application, as the only evidence in the record to support the denial was comments made by concerned citizens during public hearings on the 2008 application. Although we noted that the "P & Z Administrator stated to Council, at the hearing on Rockford's appeal, that Rockford's 2008 application, in fact, complied with all applicable requirements," we did not find that the 2008 application actually satisfied all of the applicable requirements of Ordinance 1173, the preliminary plan or the development text. *Id.* at ¶ 34. *See id.* at ¶ 23, quoting Ordinance 1173.06(b)(3) (noting that "[i]f the development plan complies with [Ordinance] 1173, the previously approved preliminary plan, and the development standards text, P & Z 'shall approve the plan' "). Accordingly, whether the 2008 plan satisfied all of the applicable Ordinances was not an issue which was determined by this court in *Rockford* I.

{¶ 23} Moreover, because Rockford allowed its approved 2008 application to expire, Rockford could not use that prior approval to force Canal Winchester to approve the 2012 application. Ordinance 1173.06(c) provides that any development "must be commenced within two years" of P & Z approval; "otherwise, no development of the land shall take place until a new Development Plan is approved pursuant to this section." Ordinance 1173.05(b) sets forth the basis for approval of a development plan, and Ordinance 1173.06(b) sets forth the procedures for approval of a development plan. Neither Ordinance allows for approval of a development plan based solely on a prior approval of a similar plan. Thus, neither P & Z nor Council could have approved the 2012 application simply because it was similar to the 2008 application. By allowing the approved 2008 application to expire, Rockford became obligated pursuant to Ordinance 1173.06(c) to submit a new development plan and go through the entire development plan

approval process anew. Accordingly, Canal Winchester was entitled to deny the 2012 application if it found that the 2012 application violated Ordinance 1173, the previously approved preliminary plan, or the development standards text, regardless of Canal Winchester's findings on the 2008 application. Because Rockford allowed the approved 2008 application to expire, and the 2012 application was a new development plan which had to be approved on its own merits, the instant appeal does not concern the same transaction which was at issue in *Rockford* I.

{¶ 24} Although the trial court stated in its decision that it had considered the whole record, our review indicates otherwise. The trial court simply compared the 2008 application to the 2012 application, and reversed Council's decision because the 2012 application was similar to the 2008 application. As such, the trial court abandoned its duty to consider the whole record and determine whether a preponderance of substantial, probative, and reliable evidence supported Council's decision to deny the 2012 application based on the alleged misrepresentation of Cormorant Drive, or in the alternative because of the alleged violations of the SCPZ and the 1990 Ordinances.

{¶ 25} Accordingly, we find the trial court abused its discretion as it did not apply the correct standard of review. Because "[t]he matter of what standard of review is appropriate in any particular case is a question of law," where the trial court utilizes "the incorrect standard of review in reaching its decision, its judgment may not stand." *Copley Twp. Bd. of Trustees v. Lorenzetti*, 146 Ohio App.3d 450, 454 (9th Dist.2001). *See also White v. Summit Cty.*, 9th Dist. No. 21152, 2003-Ohio-1807, ¶ 8-11 (noting that, as the "court of common pleas utilized the incorrect standard of review in reaching its decision," its decision was "erroneous as a matter of law, and its judgment may not stand"); *Athenry Shoppers Ltd. v. Planning and Zoning Comm.*, 10th Dist. No. 08AP-742, 2009-Ohio-2230, ¶ 22, 26 (noting that "[a]lthough the trial court expressly identified the R.C. 2506.04 standard of review, the trial court did not consider all the evidence in the record in determining that the preponderance of reliable, probative, and substantial evidence did not support the commission's decision," and accordingly the trial court "erred as a matter of law"); *South Park, Ltd. v. Avon City Council*, 9th Dist. No. 04CA008558, 2005-Ohio-2153, ¶ 7; *Glencairn Corp. v. Richfield Twp.*, 9th Dist. No. 22209, 2005-Ohio-1463, ¶ 13-14.

{¶ 26}  As the trial court failed to determine, based on the record, whether Council's order was unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence, the trial court's decision is erroneous as a matter of law and cannot stand. On remand, the trial court must review the entire record and determine whether Rockford misrepresented Cormorant Drive as a public right-of-way on the 2012 application and, if Rockford did misrepresent the status of Cormorant Drive, whether that misrepresentation was an adequate ground upon which to deny the 2012 application. If the trial court finds that a preponderance of substantial, reliable, and probative evidence does not support Council's decision to deny the 2012 application based on the status of Cormorant Drive, then the trial court must further determine whether the 2012 application violates the SCPZ and the cited 1990 Ordinances, and if it does violate those provisions, whether those violations were adequate grounds upon which to deny the 2012 application.

{¶ 27}  Based on the foregoing, Canal Winchester's first assignment of error is sustained. Our ruling on Canal Winchester's first assignment of error renders its second assignment of error moot.

## IV. DISPOSITION

{¶ 28}  Having sustained Canal Winchester's first assignment of error, thereby rendering Canal Winchester's second assignment of error moot, we reverse the judgment of the Franklin County Municipal Court, Environmental Division, and remand the matter to the trial court for proceedings consistent with this decision.

*Judgment reversed; case remanded.*

TYACK and BROWN, JJ., concur.

————————————————